Cleveland, Cincinnati, Chicago and St. Louis Ry. Co.

*v.*

Clifford Best.

*Opinion filed November 1, 1897—Rehearing denied December 14, 1897.*

1. Carriers—*mere fact that person rides in caboose with conductor's consent does not make him a passenger.* The mere fact that a person is traveling in the caboose of a freight train with the conductor's consent does not entitle him to the rights of a passenger, irrespective of the questions of the real or apparent authority of the conductor to accept him as a passenger and the traveler's knowledge of the extent of that authority. (Magruder, J., dissenting.)

2. Same—*when authority of freight conductor to carry passengers will not be implied.* A freight train conductor's authority to carry passengers may be implied from the course of business of the company in mingling its freight and passenger business, but no such implication arises where the freight trains of the company in question have long been devoted by the rules and practice of the company exclusively to the carriage of freight. (Magruder, J., dissenting.)

3. SAME—*the law implies no authority of freight conductor to receive passengers.* Where a company's rules prohibit the carriage of passengers on freight trains, and nothing in the practice of the company is shown affording ground for an inference that passengers may be carried on such trains, an instruction which assumes, as matter of law, that a freight conductor has authority to receive a passenger is erroneous. (MAGRUDER, J., dissenting.)

4. INSTRUCTIONS—*bad instruction is not cured by one which simply contradicts it.* An erroneous instruction is not cured by another instruction given for the opposite party which simply contradicts it, leaving the jury free to follow either.

5. NEGLIGENCE—*when an instruction as to degree of proof necessary to rebut presumption of negligence is erroneous.* An instruction in an action for damages for personal injuries which places upon the defendant a presumption of negligence, and authorizes the jury to infer such negligence unless the evidence of the defendant satisfies their minds to the contrary, is erroneous.

*C., C., C. & St. L. Ry. Co.* v. *Best,* 68 Ill. App. 532, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JAMES GOGGIN, Judge, presiding.

J. T. DYE, (REMY & MANN, of counsel,) for appellant:

Going aboard of the train by the invitation and permission of the conductor does not, of itself, constitute the relation of carrier and passenger. *Eaton* v. *Railway Co.* 57 N. Y. 382; *Smith* v. *Railroad Co.* 124 Ind. 395; *Railway Co.* v. *Moore,* 49 Tex. 31.

The company has a clear right to make a rule that no one shall be carried as a passenger on its freight trains. *Railroad Co.* v. *Johnson,* 67 Ill. 314.

A person does not become a passenger by inducing the conductor, in disregard of his duty and in fraud of the rights of the company, to permit him to ride without paying fare. *Barkley* v. *Railroad Co.* 37 Ill. App. 294; *Hoehn* v. *Railroad Co.* 52 id. 662; 152 Ill. 223; *Railway Co.* v. *Brooks,* 81 id. 292.

No recovery can be had of a railroad company for a personal injury to a passenger on its train of cars, caused

by mere negligence, when he knowingly and fraudulently induces the conductor to disregard his duty and defraud the company out of the amount of his fare, for his own profit. *Railway Co.* v. *Brooks*, 81 Ill. 246.

A person riding upon a free pass issued to another cannot recover for injuries caused by gross negligence amounting to willful injury. *Railway Co.* v. *Beggs*, 85 Ill. 80; *Way* v. *Railroad Co.* 64 Iowa, 51; 73 id. 463.

WILLIAM STREET, (JOHN WINANS, and WILLIAM RU-GER, of counsel,) for appellee:

A contract is implied, when one takes passage with a common carrier, that he shall pay a reasonable price or reward for being carried, and that the carrier shall exercise due care, skill and diligence in transporting him safely and speedily to the journey's end; and it is unnecessary to prove an express contract or actual payment of the reward. *Frink* v. *Schroyer*, 18 Ill. 420.

The payment of the fare, or price of the carriage, is not necessary to give rise to the liability. The carrier may demand its payment if he chooses to do so; but if he permits the passenger to take his seat or to enter his vehicle as a passenger without such requirement, the obligation to pay will stand for the actual payment, for the purpose of giving effect to the contract, with all its obligations and duties. Taking his place in the carrier's conveyance with the intention of being carried creates an implied agreement upon the part of the passenger to pay when called upon, and puts him under a liability to the carrier, from which at once spring the reciprocal duty and responsibility of the carrier. Hutchinson on Carriers, (2d ed.) sec. 565.

It is not necessary that a traveler should have actually paid his fare or have expressly agreed to pay it, or even intended to pay it, in order to entitle him to the rights of a passenger. It is sufficient if he puts himself in such a position as to give the carrier a legal right to

demand whatever fare may be due, and has committed no fraudulent act by which the carrier has been prevented from knowing of his presence, or of his liability, if any, to pay. 2 Shearman & Redfield on Negligence, (4th ed.) sec. 488.

If a railway company waives its right to eject an intruder or trespasser from a train, and consents to carry him, it should be held obligated to exercise ordinary care, for the trespasser should then be regarded as a licensee. *Railway Co.* v. *West*, 125 Ill. 323.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

At about eight o'clock on the morning of March 9, 1892, appellee arrived at the union depot in Cincinnati on a passenger train over the Queen and Crescent railroad from Jacksonville, Florida, on his way to Indianapolis. The passenger trains of appellant start from that depot, and there were four such regular trains to leave that day for Indianapolis, one of which left at 8:30 in the morning and another at 1:10 in the afternoon. Appellee was about twenty-one years old. The previous summer he had followed the races in several States as a score-card boy, and about January 1, 1892, he had gone to Jacksonville, Florida, where he had worked as a bell-boy in a hotel and at packing oranges. His home was at Janesville, Wisconsin, and he was returning to that place. He spent the forenoon in Cincinnati without any apparent business to detain him, and between eleven and twelve o'clock was at a livery stable one mile from Riverside, a station where appellant had a freight yard, nearly four miles from the union depot and where the passenger trains for Indianapolis did not stop. He went from the livery stable to Riverside and remained about that place until 3:30 in the afternoon. Between the station at Riverside and the freight yard there was a public highway and a sidewalk, beyond which there was a retaining wall along the freight

yard, four or five feet high, built of stone. The freight yard was reached by a ladder or stairway of four or five wooden steps. The second section of a freight train left these yards at 3:50 in the afternoon, and shortly before that time appellee went from the station across the highway and up into the freight yard. The caboose of the freight train stood about a hundred yards from the station, in the freight yard where the train was made up. The train was an ordinary freight train, loaded with coal and miscellaneous merchandise. It was destined for Indianapolis, one hundred and seven miles from Riverside. He rode on the train to Brookfield, Indiana, about ninety-two miles, where it stopped to take water, and was leaving that place when a rear-end collision occurred through another freight train running into it in the night and in a blinding snow storm. He was pinioned fast in the wreck, and so burned by the stove that it necessitated amputating the right leg two inches below the knee and the four small toes of the left foot. Passengers were not carried on freight trains between Cincinnati and Indianapolis, and had not been for eight years or more, and employees were forbidden to accept or carry passengers on such trains. Appellee brought this suit to recover damages for his injuries, and in the Superior Court of Cook county obtained judgment for $12,500. An appeal was taken by appellant to the Appellate Court for the First District, where one of the justices took no part in the case and the other justices disagreed, so that there was no decision in that court, and the judgment was affirmed by operation of law.

As the declaration stood at the trial there were two counts, the first of which alleged that the plaintiff became a passenger for hire in one of the cars of defendant, to be carried from Riverside to Indianapolis, and was injured by defendant's negligence; the second, although not using the term "passenger," was in substance the same, and alleged that plaintiff, with the knowledge and con-

169—20

sent of the conductor, entered a car adapted to and used for the carriage of passengers, to be carried from Riverside to Indianapolis, and was ready to pay proper and usual fare when requested, whereupon it became the duty of defendant to carry him safely, but the duty was disregarded, etc. The plea was the general issue.

The first instruction given at the request of the plaintiff was as follows:

"If you find, from the evidence, that the plaintiff entered the caboose car in question and rode therein from Riverside station, a distance of ninety miles or more, to the knowledge and with the consent of the defendant's conductor in charge of defendant's train to which said caboose car was attached, and you further find that the plaintiff was, at the time of the collision and injury, in the exercise of ordinary care, and you further find that the collision and injury to the plaintiff was caused by negligence of the agents or servants, or any of them, of the defendant, then you should find for the plaintiff."

The instruction directed the jury to find a verdict for the plaintiff on the issues submitted to them, if they found, from the evidence, the facts stated in it. Plaintiff testified that the conductor stood near and facing him when he got on the car, and his evidence showed that he rode with the consent of the conductor. In the collision the conductor and brakeman were both killed, so that the evidence of such knowledge and consent came from the plaintiff alone. It was proved that the conductor was not authorized by the rules and regulations of defendant to carry passengers, but was expressly forbidden to do so, and, as before stated, freight trains had not carried passengers for years prior to that time. The plaintiff did not enter the caboose at a passenger station, or any place apparently designed for the reception of passengers, but a hundred yards distant from the station, in a freight yard used for making up freight trains. The caboose was of the smallest kind, such as are attached

to all freight trains and necessary for carrying tools and supplies and for the accommodation of trainmen. It was such as are always attached to trains exclusively for freight, without any provision for the comfort or convenience of passengers. There was no invitation or direction to the plaintiff to take this train, and he was not misled in any way as to the authority of the conductor to accept him as a passenger. There was no evidence that the defendant had held out the conductor as having authority to accept or carry passengers on the train. On the other hand, there was evidence that the plaintiff, after the accident, said that he was "busted" in Cincinnati; that he got in with the conductor and brakeman and the conductor agreed to carry him to Indianapolis; that he said to another witness, "I was bumming my way," and that the night was cold and he had come into the caboose when the train stopped, and that he said to another witness that he knew he had no business on the train. Plaintiff denied making these statements, but the question as to which told the truth was for the determination of the jury. In deciding upon the facts there was further important evidence to be considered by the jury in the circumstances, before set forth, of plaintiff leaving the union depot, where he could have taken a passenger train for a quick and comfortable trip to Indianapolis, and going to this station and freight yard for no reason given by him and no apparent reason, unless the alleged statements indicated a motive. Any knowledge or consent by the conductor that plaintiff should be in the caboose or ride upon the train was in violation of the rules of defendant and in disregard of his duty to it, and the evidence tended strongly to prove that the plaintiff knew that such was the fact. If the jury came to that conclusion, they could not find that plaintiff had acquired the rights of a passenger which he claimed by his declaration, and they could not find for him as directed by the instruction. 2 Shearman & Redfield on Negligence, sec.

489; *Toledo, Wabash and Western Railway Co.* v. *Brooks*, 81 Ill. 245; *Toledo, Wabash and Western Railway Co.* v. *Beggs*, 85 id. 80.

Under the instruction it was only necessary for the jury to find that plaintiff entered the caboose and rode therein with the consent of the conductor, and was injured by the negligence of the defendant's servants, regardless of the fact that freight trains did not carry passengers and the conductor had no authority to give the consent, and even if plaintiff knew that the conductor exceeded his authority and violated his instructions. The power of the conductor to bind defendant rests upon the general doctrine of agency. He had no authority to bind it except within the scope of his agency. The conductor of a passenger train is the agent of the railroad company to receive and transport passengers, and the conductor of a freight train is the agent of the company to transact the business of such a train. A railroad company has a clear right to make a rule that no one shall be carried as a passenger on its freight trains. (*Illinois Central Railroad Co.* v. *Johnson*, 67 Ill. 312.) Defendant had made such a rule and enforced it for many years, and had not been in the habit of carrying passengers on such trains. There have been many cases where railroad companies have mingled the two classes of business, and have been accustomed to carry passengers upon their freight trains, or some of them. In such cases the conductor has the authority implied from such course of doing business. The cases of *Ohio and Mississippi Railroad Co.* v. *Muhling*, 30 Ill. 9, where the road had been carrying passengers on their construction trains, *Illinois Central Railroad Co.* v. *Johnson, supra,* where it was the custom of the road to carry passengers on freight trains and no regulation to the contrary had been adopted, and *Lake Shore and Michigan Southern Railroad Co.* v. *Brown*, 123 Ill. 162, where it was the custom to pass shippers of live stock over the road with their stock and the deceased had a pass and

was with his car of stock, are cases of that kind in this court. The cases cited in support of the instruction are almost all of the same character, where the company carried passengers on its freight trains generally, or carried them on some of them, and there was nothing to distinguish the particular train from those on which passengers were carried. In this case there was an entire separation of the freight and passenger business into distinct departments. The freight trains were used exclusively for the carriage of freight, and there had been nothing in the practice of the defendant which afforded any ground for an inference that passengers would be carried on such trains. Plaintiff testified to other persons riding in the car on this trip besides himself and the train crew, but there was no evidence that any passenger had ridden on it or any other freight train of defendant before that time. The effect of this instruction was to hold, as matter of law, that under these circumstances the conductor had authority to accept the plaintiff as a passenger and create the relation alleged in the declaration. To say the least, there is no such rule of law, and, indeed, counsel for plaintiff contend in argument that the question of the authority of the conductor is one of fact. As such a question, the instruction, which took from the jury all consideration of the extent of the conductor's real or apparent authority and the scope of his employment, should not have been given. The fifth instruction given at request of defendant was contradictory of this one, but did not serve to remedy the error in giving it, since the jury might follow either.

The following is the second instruction given at the request of the plaintiff:

"If you find, from the evidence, that the plaintiff rode in the caboose car in question from Riverside station to the place of collision in question with the consent of defendant's conductor in charge of the train to which said caboose car was attached, the plaintiff had the right to

assume that such conductor was not violating his duty by allowing him to ride in said car, and the plaintiff was lawfully in said car, even though there was a rule or regulation, unknown to him, prohibiting such conductor from carrying passengers on said train."

This instruction has all the vices of the first one, and in addition assumes that the rule and regulation prohibiting conductors from carrying passengers on freight trains were unknown to the plaintiff. It disregarded every fact and circumstance tending to prove notice to plaintiff that the train was not used or designed for carrying passengers and all evidence that he knew the conductor was violating his duty, and told the jury that he had a right, as a matter of law, to assume that the conductor was not violating his duty, and that plaintiff was lawfully in the caboose, regardless of such facts and evidence.

The third instruction given for the plaintiff was as follows:

"A party charging negligence has the burden of proving it, but it may sometimes be proven without showing any particular negligent acts or omissions. The happening of an occurrence may be sufficient to justify a finding that it was caused by negligence, and in such case it is not necessary to prove what negligent acts or omissions cause the occurrence."

This was followed by the fourth, as follows:

"A collision of trains of the character and with the attendant circumstances shown by the testimony given on the part of the plaintiff in this case, justifies the inference that it was caused by negligence on the part of defendant or some of its agents or servants, and unless the testimony given on the part of defendant satisfies your mind to the contrary, you may infer such negligence on the part of the defendant, its agents or servants, as you think justifiable in view of the happening of such collision under the attendant circumstances dis-

closed by the evidence, and the degree of such negligence, if any you find, is for you to determine."

Negligence is ordinarily a question of fact, and this instruction not only told the jury, as matter of law, that there was negligence on the part of the defendant in this instance, but authorized them to find that there was such negligence unless the testimony for the defendant satisfied their minds to the contrary. It not only placed the presumption of negligence on the defendant, but set up as the standard of proof by which the defendant could rebut the presumption, that it should satisfy their minds to the contrary. That degree of proof is not required. It is so well established that an instruction of that character is erroneous that the error cannot well be overlooked. *Herrick* v. *Gary*, 83 Ill. 85.

These were all the instructions given at the instance of the plaintiff, except one on the measure of damages, and no other instruction was given which could obviate the defects contained in them or cure the errors in giving them.

The judgments of the Appellate Court and Superior Court of Cook county are reversed, and the cause is remanded to the Superior Court.

*Reversed and remanded.*

Mr. Justice Magruder: I dissent from the conclusion announced by this opinion and from the reasoning by which such conclusion is sought to be sustained. I cannot concur in the doctrine, that a railroad company is not liable for injury to a passenger upon a freight train, whom a conductor has permitted to travel upon such train, simply because some arrangement exists between the company and its conductors on freight trains, by which the latter are instructed not to receive passengers thereon.