## CINCINNATI, HAMILTON & DAYTON RAILWAY COMPANY *v.* PHINNEY.

[No. 5,442. Filed March 14, 1906. Rehearing denied June 5, 1906. Transfer denied June 29, 1906.]

MASTER AND SERVANT.—*Railroads.—Ways, Works and Machinery. —Steel Punch. — Assumption of Risk.* — A servant, holding a steel punch, used until its head is burred and battered, while his fellow servant strikes it for the purpose of driving out an iron bolt, assumes the risk that small pieces of steel may fly therefrom and injure him, such defect being appreciated and being known by such servant.

From Hamilton Circuit Court; *Ira W. Christian,* Judge.

Action by Claude E. Phinney against the Cincinnati, Hamilton & Dayton Railway Company. From a judgment on a verdict for plaintiff for $5,000, defendant appeals. *Reversed.*

*E. J. Jacoby, Theodore P. Davis* and *Miller, Elam & Fesler,* for appellant.

*Wymond J. Beckett* and *Elliott, Elliott & Littleton,* for appellee.

BLACK, P. J.—The appellee was injured while in the performance of his duty as a machinist in the employ of the appellant at its machine-shop in Lima, Ohio, engaged,

with the aid of a helper, in using a handle punch in removing a bolt from a smoke-arch on a locomotive engine, the injury being the destruction of one of the appellee's eyes, by being struck by a sliver or scale of iron which flew off the head or pole of the handle punch, which the appellee was holding by means of its wooden handle upon the bolt, while the punch was struck with a hammer by the helper. It was alleged in the complaint that the appellant neglected to keep the handle punch in proper repair, and in a reasonably safe condition to do the work it was intended to do, and for which it was used; that it was furnished by the appellant to the appellee through his helper, to drive out and remove bolts from the smoke-arch; that its pole or head, by long use, had become burred or split, and pounded down, spread out, rough and scaly; that the appellant knew its condition and, in the exercise of ordinary care, should have repaired and reformed the head of the punch, but it negligently permitted the punch to be used in its factory by said employes until its head had become battered, and was in the condition aforesaid, and also negligently failed to repair the punch and to put its head in proper condition and shape to make it safe and serviceable; that in the performance of his duty and in the line of his work, it was the appellee's duty to take hold of the handle of the punch, and to hold the punch against the bolt in the smoke-arch, and it was the duty of his helper to strike the punch with a hammer, and by that means to drive the bolt out of the smoke-arch; that the appellee placed the punch upon the bolt in a proper and careful manner, and his helper struck it in the usual way; that by reason of the unsafe, burred and negligent condition in which the punch head had been so left, the blow upon it by the helper "caused a sliver to fly off of the head of the hammer and into" appellee's eye, etc.; that the injury to his eye was caused by the negligence of the appellant, as aforesaid, in failing to keep said tool in proper and safe condition, and in furnishing the appellee with said

defective tool to perform his work as aforesaid; that he had no knowledge that the tool was defective as aforesaid, and in the exercise of ordinary care could not have discovered the defective and dangerous condition of the tool before the happening of the accident; that by reason of the negligence of the appellant the scale flew off of said punch and into the appellee's right eye, etc.

Some objections to the complaint are suggested by counsel, but we think it proper to pass to a consideration of the case upon its real merits, rather than to send the case back for a correction of the pleading, if it can be said to be defective, and thus to prolong unnecessarily a controversy over the facts, which sufficiently appear in the record.

With the general verdict in favor of the appellee the jury returned answers to interrogatories, whereby they found specially that the appellee was employed by the appellant from July 15, 1902, to March 24, 1903, as a machinist. At the time of his injury he had been engaged by the appellant in such capacity about seven months. At the time he was employed by the appellant he was a skilled mechanic in the line in which he was employed. He received his injury at 1:20 o'clock in the afternoon. The punch which he was using at the time he received his injury was not in the condition of punches in common use by railway companies in that line of work. As to whether the pole or head of the punch which he was using at the time he was injured was split when he first began to use it on the day on which he was injured, there was no evidence. The pole or head of this punch was rough and scaly when he began to use it on that day. The punch was in design, but not in character, such as was generally used in that line of work. The pole or head of the punch became burred from long usage prior to the time when he first obtained it on the day of his injury. A sliver of iron from the bolt which was being removed from the smoke-arch did not fly off and into his eye and cause his injury. The head or pole of the punch

was pounded down and spread out when he first obtained it
on the day of his injury. Before he was injured he could
have seen the condition of the pole or head of the punch.
A sliver of iron from the head or pole of the punch flew
off and into his eye, causing his injury. The flying off of
scales or small particles of iron is an ordinary occurrence
or incident in the use of a handle punch, as the same was
being used by the appellee when he was injured. There was
no evidence as to whether, when scales or small particles
of iron fly off in the process of driving out bolts from a
smoke-arch, the direction in which they fly is affected by
the position in which the operator holds the punch. When
he received his injury the appellee was attempting to drive
out a bolt from a smoke-arch. He was working with a
helper. The appellee did not, but his helper did, strike the
blow with a hammer upon the punch which the appellee
was using at the time he received his injury. There was no
evidence as to whether the condition of said punch was open
and obvious at the time mentioned. When the head of a
punch is burred, the striking of the same with a hammer
is likely to cause a sliver of iron to fly off of the head of the
punch. There was no evidence as to whether the condition
of the punch was open and obvious to the appellee and his
helper at the time mentioned. There was nothing to pre-
vent the appellee from observing and ascertaining the con-
dition of the head of the punch he was using. He had good
eyesight prior to his injury. He had been employed fifteen
years in the line of his work. He had worked in and about
that place in that line of his work for the appellant seven
months. He had been working with punches in doing the
class of work in which he was engaged when he was injured
about ten years. He examined the point of the punch be-
fore he was injured. The engine on which he was working
when he was injured was backed into the shop on a track
through an open door in the shop. There was no evidence
as to whether this door was open at the time he was injured,

or as to whether there was anything between the appellee and the door at that time. He then was about ten feet from this door.

It is not claimed and does not appear that the handle punch was not properly made of suitable and sound materials and in proper shape, or that it was not such a punch in design and materials as was adapted to the proper performance of the work in which it was used. No failure on the part of the employer properly to inspect it to ascertain its insufficiency in any of these particulars was asserted, and in such respects it must be considered, for the purposes of the case, as a sufficient tool. The only fault charged to the appellant was that it had permitted the head of the punch to become battered down and burred by its proper use, wherein it was struck and pounded upon the head by hammers in driving out bolts, against the ends of which the point of the punch was held by the machinist while his helper did the striking with the hammer. It was not a broken or wholly worn out tool. It was not proved to have been split. The only fault attributed to it and found to exist was that scales or slivers of iron were liable to fly off from it when struck by the hammer. No negligence concerning the character of the tool or its adaptability, except in relation to this peculiar source of danger, was asserted as part of the cause of action. It was a common tool of the simplest character, there being nothing unknown, obscure, or uncertain in its materials, structure, or operation, or in its worn condition.

The appellee was a skilled mechanic in the line in which he was employed. He had been employed in the line of his work for fifteen years. He had been working with punches in doing the class of work in which he was engaged when injured about ten years, and had worked for appellant in and about the place where he was injured in the line of his work for seven months. He examined the point, which he placed upon the end of the bolt, which he and his helper

were driving out by means of the punch and hammer. They were engaged in work which required them both to look at the punch. The appellee had good eyesight. There was nothing to prevent his observing and ascertaining the condition of the punch, and he could have seen its condition. The injury was caused by a sliver of iron flying off of the head of the punch when it was struck with the hammer by the helper. The striking of the head of a punch in its known condition was likely to cause such a sliver so to fly off. The flying off of scales or small particles of iron is an ordinary occurrence or incident in such use of a handle punch. The possibility or likelihood of such an ordinary occurrence in the work of such a skilled and experienced mechanic with such a tool must be regarded as creating one of the ordinary dangers of such service. The injury was an accident, resulting in some loss perhaps to the employer and in a great loss to the unfortunate employe, whom all must commiserate. The principles of law applicable to such a state of facts have been often announced and illustrated by references to cases and by the statement of distinction between the cases.

The liability of the employer cannot be made dependent wholly upon the size or the complicated or intricate nature of the instrument furnished by it to the employe, but if the instrument be a tool in common use in the employment, and be of such simple character as that here involved, and its actual condition and adaptability be necessarily known to the employe using it, and the danger incident to its use from which an injury occurs to an experienced adult employe be necessarily understood by such employe, the employer's responsibility should not extend to liability for such injury.

We cannot adopt the theory that there can be no recovery in favor of the employe injured by an instrument for work furnished him by his employer, through some quality or condition thereof adapted to produce the injury, whenever

the danger of injury is as well known to the employe as to the employer. This would not be in harmony with the accepted doctrine that a higher obligation of inspection rests upon the employer than upon the employe; but if the adult, experienced employe voluntarily uses such a tool as that in question in the case at bar, having all the understanding of the danger involved in its use that the employer has, and all that by proper inspection he would have, there is occasion for the application in the decision of such a case of the maxim *volenti non fit injuria,* or ground for characterizing the happening of the injury as an accident.

Judgment reversed, with instruction to sustain the appellant's motion for judgment upon the special findings of the jury.