## Baltimore & Ohio Southwestern Railroad Company v. Walker.

[No. 6,352.  Filed April 28, 1908.]

1. PLEADING.—*Complaint.*—*Master and Servant.*—*Assumption of Risk.*—*Employers' Liability Act.*—*Railroads.*—A complaint alleging that defendant railroad company's foreman ordered an employe to procure a chisel and assist in cutting some bolts in a frog which was being removed; that such servant procured a defective chisel for such work; that plaintiff's foreman, to whose order plaintiff was bound to conform and did conform, ordered plaintiff to do some work near by; that an employe in striking such chisel caused a piece to fly therefrom, destroying plaintiff's eye, and that plaintiff did not see nor have an opportunity to see such chisel, states a cause of action, and does not show an assumption of risk, or that the negligence was solely that of a fellow servant. p. 592.

2. MASTER AND SERVANT.—*Works, Ways and Machinery.*—*Care.*—It is the master's duty to use ordinary care to provide the servant with safe tools with which to work; and this duty extends to the protection of employes within the sphere of danger resulting from the furnishing of defective tools. pp. 593, 600.

3. SAME.—*Assumption of Risk.*—*Notice.*—The servant assumes only the risks ordinarily incident to his service, of which he has, or should have knowledge. p. 593.

4. SAME.—*Assumption of Risk.*—*Notice of Danger.*—The assumption of a risk implies actual or constructive knowledge of the danger. p. 593.

5. SAME.—*Fellow Servants.*—*Foreman.*—*Selecting Tools.*—A foreman in selecting a defective chisel, which caused injury to a servant employed near the servant using such chisel, represents the master, and the master is liable for injuries caused thereby, where such foreman gave no warning of such defect. p. 593.

Baltimore, etc., R. Co. *v.* Walker—41 Ind. App. 588.

6. TRIAL.—*Instructions.—Master and Servant.—Railroads.—Furnishing Safe Tools.*—An instruction that defendant railroad company was not bound to inspect a single tool like the chisel causing the injury, is properly refused, where there is no showing that the injured servant knew or had any opportunity to know of the defect. p. 594.

7. SAME.—*Instructions.—Assumption of Risk.—Notice of Defects.*—An instruction on the question of the servant's assumption of risk, which omits entirely the servant's knowledge •or want of knowledge of the danger, is properly refused. p. 594.

8. SAME.—*Instructions.—Applicability to Evidence.—Contributory Negligence.*—An instruction that if the plaintiff, a servant, saw or might have seen the defective chisel used by a fellow servant, and which caused plaintiff's injury, he cannot recover because of contributory negligence, is inapplicable, where the evidence shows that plaintiff never saw such chisel before the injury. p. 594.

9. SAME.—*Instructions.—Peremptory.*—A peremptory instruction for defendant is properly refused, where there is some evidence sustaining plaintiff's allegations. p. 594.

10. SAME.—*Instructions.—Duplication of.*—It is not erroneous to refuse instructions substantially covered by those given. p. 594.

11. SAME.—*Instructions.—Preliminary Remarks.*—A preliminary remark by the judge, that the law imposed upon him the duty of instructing the jury as to the law governing the case, made after he had read the instructions requested, and before reading those prepared by himself, is not misleading nor prejudicial. p. 595.

12. SAME.—*Instructions.—Damages.—Repetitions.*—An instruction that plaintiff is entitled to recover for his pain, loss of eye, disfigurement, mental and physical pain suffered, and loss of service, if the facts are found in his favor, though containing repetitions, is not misleading. p. 595.

13. SAME.—*Instructions.—Applicability to Evidence.*—Instructions explaining the master's duty to use ordinary care in furnishing safe tools, the servant's assumption of risk, and the master's duty to take notice of the tendency of tools to wear and become defective by use, are not inapplicable to the evidence, where there is evidence tending to prove such facts. p. 596.

14. SAME.—*Instructions.—Damages.—Measure of.*—An instruction that if the plaintiff has proved the allegations of his complaint, the jury should award him such damages as in its judgment will fairly compensate him for the injury he received, not to exceed the demand, is not erroneous. p. 597.

15. SAME.—*Instructions.—Burden of Proof.—"Satisfy."*—An instruction that the burden is on plaintiff to "satisfy" the jury that the allegations of his complaint are true, is not misleading, the word "satisfy" evidently meaning to make clear or to remove from doubt. p. 598.

16. MASTER AND SERVANT.—*Defective Tools.*—Where a railroad servant was directed by his foreman to secure a chisel and to cut off certain bolts in a frog, and he selected, at the company's tool house, a defective chisel, which, while in use, chipped, and destroyed plaintiff's eye, plaintiff being at work near by and being ignorant of the defect, the company is liable under section one of the employers' liability act (Acts 1893, p. 294, §8017 Burns 1908). Roby, C. J., and Myers, J., dissenting. pp. 599, 601.

17. SAME.—*Duties of Inspection.*—A higher duty of inspection rests upon the master than upon the servant; and this duty to inspect applies to simple as well as complex tools. p. 600.

From Orange Circuit Court; *Asa Elliott,* Special Judge.

Action by William E. Walker against the Baltimore & Ohio Southwestern Railroad Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*W. R. Gardiner, C. K. Tharp, C. G. Gardiner* and *Edward Barton,* for appellant.

*Alvin Padgett, A. J. Padgett, D. H. Padgett* and *Perry McCart,* for appellee.

COMSTOCK, J.—The appellee was plaintiff below. The material allegations of his complaint are as follows: That on April 18, 1905, plaintiff was engaged in the service of the defendant as a section man, working in what was known as the "extra gang," and under the supervision and direction of a foreman of defendant, to whose orders and directions he was bound to, and did conform; that there were several other employes of defendant working with the plaintiff in said extra gang and subject to the orders of said foreman; that at the same time the defendant had another foreman and gang of workmen, constituting what was known as the "regular section gang," and that on said day both of said gangs of employes were engaged in taking out and replacing a frog, constituting a part of the defendant's track, and that they were doing said work under the orders and supervision of said defendant's foreman; that plaintiff had never been employed in such line of work prior to the happening of the grievances hereinafter complained

of; that while engaged in said work plaintiff and said other workmen were doing the work of the defendant, and were in the line of their duty; that while prosecuting said work one of said foremen ordered one of the persons working at said undertaking to go to the tool-house of defendant and get a chisel to cut the bolts holding the old frog in place; that said employe, in obedience to said order and directions, went to the tool-house and got a chisel; that said employe held the chisel on one of said bolts and another of said employes began to strike on the head of the chisel with a heavy hammer; that at said time plaintiff was standing a few feet from where said bolts were being cut, and was required by the defendant and the foreman, Murphy, to remain in the immediate vicinity of said work, and engaged in the line of his duty, and the men holding the chisel and wielding the hammer were at that time engaged in the line of their duty as employes of the defendant; that while thus engaged a piece of the metal of which the chisel was made flew off of the same and struck plaintiff in the left eye and destroyed the sight thereof; that plaintiff's said injury was caused by reason of the negligence and carelessness of the defendant, in this: That said defendant furnished said chisel for the use of its employes while in its employ; that it carelessly and negligently suffered said chisel to be and become old, worn and defective, and the head thereof battered and slivered, and to become thereby dangerous and liable to throw off slivers; that until after plaintiff's said injury he had never seen said chisel, and that he had no opportunity to see and observe the same while working to help remove said frog and before his said injury; that defendant, by and through its foreman and officers, knew, or by the exercise of reasonable diligence, might have known, of the defective condition of said chisel at and before said injury; that plaintiff's injury was caused wholly by reason of the defendant's carelessness and negligence in permitting said chisel to become defective as alleged, and to be used

while in such defective condition, and that his said injury was received without any fault or carelessness on his part contributing to his injury; that by reason of said injury the sight of plaintiff's eye was entirely destroyed, and he was made thereby to suffer great pain and loss of time from his employment, all to his damage in the sum of $10,000. Appellant's demurrer for want of facts to the complaint was overruled and an answer in general denial filed. The action was begun in the Lawrence Circuit Court, and upon change of venue was tried in the Orange Circuit Court, in which court a jury returned a verdict in favor of appellee for $3,000, on which judgment was rendered.

The errors assigned are the action of the court in overruling appellant's demurrer to the amended complaint, and in overruling appellant's motion for a new trial.

The objections made to the sufficiency of the complaint are that the condition of the chisel was obvious to appellee, who was a mature man with good eyesight; that to

1. look at it would be to inspect it, and that such inspection would reveal its condition as readily to one person as another; that the risk was incident to the service, and was assumed; that the selection of the chisel, if negligent, was the negligence of a co-employe; that the averments show that the appellee realized the danger, and that though an opportunity existed for him to avoid it he did not attempt to do so. The first and second objections to the complaint are met by the allegation that appellee never saw the chisel until after his injury, and had no opportunity or occasion to examine or observe its condition; that at the time of plaintiff's injury, by the direction of Murphy, the foreman, the bolts were being cut by one of the employe's holding the sharp edge of the chisel on said bolts, by means of a short handle thereon, and another employe's striking powerful blows on the head thereof with a heavy sledgehammer, thus showing the chisel was near the ground.

Whether appelle could have seen the chisel, depended upon the positions of the workmeñ and the chisel at the time. He was not called upon to use or inspect the chisel, and his attention was not called to it.

It is the duty of the master to furnish an employe reasonably safe tools with which to perform his work. This requirement applies to the safety, not only of an employe using the tool, but to those whose duties require them to be within the risk of injury arising from any defect therein. An employe assumes only the risks ordinarily incident to his employment of which he has knowledge, and such as by the exercise of ordinary diligence could be known to him. Assumption of risk implies knowledge of danger. Appellee was not assisting in the work in which the chisel was being used.

The foreman is a fellow servant, and for his negligence in discharging his duty as foreman, when such negligence is alone the cause of injury, the master is not responsible, but the duty of the master to furnish reasonably safe tools is a continuing one. In the selection of the chisel in question the foreman, although a fellow servant, was acting in place of the master. It was his duty to warn appellant's servants of the defective condition of the chisel. *Ohio, etc., R. Co.* v. *Stein* (1894), 140 Ind. 61; *Mitchell* v. *Robinson* (1881), 80 Ind. 281, 41 Am. Rep. 812; *Noll* v. *Louisville, etc., R. Co.* (1891), 129 Ind. 260.; *Taylor* v. *Evansville, etc., R. Co.* (1889), 121 Ind. 124, 6 L. R. A. 584, 16 Am. St. 372; *Blondin* v. *Oölitic Quarry Co.* (1894), 11 Ind. App. 395; *Louisville, etc., R. Co.* v. *Berkey* (1894), 136 Ind. 181. Having no reason to anticipate injury because of lack of knowledge of the condition of the chisel, there was no occasion to attempt to avoid it.

The court refused to give instructions one, two, three and four requested by appellant. The second instruction would

have told the jury that a railroad company is not required to inspect simple tools like a chisel used to cut bolts and nuts, the condition and nature of which is as obvious to one person as another. This instruction might have been proper if the injured party had knowledge, or an opportunity of knowledge, of the condition of the chisel.

The third instruction was correctly refused, because it entirely ignored the knowledge or want of knowledge of appellee as to the condition of the chisel, it being the duty of appellant to furnish reasonably safe tools.

The fourth instruction was, in effect, that if the jury should find from the evidence that the condition of the chisel was obvious, and that its condition might have been seen by plaintiff, if he had looked toward it, then he is held to have seen it, whether in fact he did see it or not, and if under such circumstances he stood by while the chisel was being used, with his face toward it, then his failure to turn his face away from the work being done would be contributory negligence, and he cannot recover. In view of the fact that appellee testified that he had never seen the chisel before the accident, and there is no evidence to the contrary, and that he was not taking any part in its use, and that contributory negligence will not be presumed, the instruction, although stated conditionally, was not applicable to the evidence.

Said first instruction, which would have peremptorily instructed the jury to find for the defendant, was properly refused, because the facts presented were properly for the determination of the jury.

Instruction eight, refused, was substantially given in instruction seven and one-half.

After having read to the jury certain instructions requested by the appellant, the court proceeded: "Gentle-

men of the jury: The law imposes upon me the duty of instructing you what the law is which governs this case." It is claimed in behalf of appellant that, after having read to the jury the instructions requested, this introductory statement, followed by instructions given upon the judge's own motion, was equivalent to a declaration that what the jury had already heard was merely *pro forma*, and what followed, what the court had to say to them and what they must regard. No exception was taken to this introductory statement, but we are not prepared to concede that the jury would place the construction upon the expression of which appellant claims it is susceptible. After all, the question remains, whether the instructions given by the court correctly state the law, and we see no reason to conclude that the jury was misled by the action complained of.

Complaint is made of the sixth instruction given, which is as follows: "If you find for the plaintiff, in estimating his damages you have the right to take into consideration the nature of the accident and character of his injuries, the pain, if any, caused thereby, the loss of the sight of his eye, if you find he so suffered, the disfigurement, if any was caused thereby, and any mental or physical pain suffered by him in consequence of the result of said injury and also any loss of service caused thereby." It is urged that this instruction is argumentative because of its repetition in directing specific attention to matters which the jury had been told, in a general way, they had a right to consider. Strictly speaking, the instruction does contain an unnecessary repetition. The bare statement that the jury had the right to take into consideration the nature of the accident and character of his injuries, the pain, if any caused thereby, would have covered the facts, but the more particular statement which follows scarcely justifies criticism.

Instructions eight, nine and ten, given, are commented

upon, not that they do not correctly state the law in the abstract, but as not being applicable to the issues and as misleading. Of course instructions should be relevant to the issues and applicable to the evidence. Said instruction eight states it to be the duty of the employer to use ordinary care to provide for his servants ordinarily safe tools and keep them ordinarily safe to work with. The ninth: An employe assumes such risks as are ordinarily incident to the service in which he engages, but he does not assume risks unknown to him or which he could not have known by the exercise of ordinary care, or such hazards as are caused by the failure of the master to perform his duty in furnishing to the servant an ordinarily safe place in which to work and ordinarily safe tools with which to do the master's work. The tenth: The employer is required to take notice of the liability of tools to wear out and become defective with age and use, and the servant may repose confidence in the prudence and action of the master and rest upon the presumption, where he has no notice to the contrary, that the master has discharged his duty. The servant is not required to search for dangers which are not open and obvious. The instructions were relevant to the issues and applicable to the evidence.

In discussing instructions four, five and six, given, with respect to the basis of the award of damages, it is pointed out in behalf of appellant that said instruction four states to the jury all the material facts alleged in the complaint and which included all those relating to the averments of negligence on the part of appellant, as well as the nature and extent of appellee's injuries and loss; that in the fifth instruction the jury was charged to pass its judgment upon the material facts of the complaint; that in the sixth, without limit as to what might be found, the jury was given the right to consider things therein enumerated in awarding damages, but it was not directed so to do, nor was it limited to that; that the whole matter with respect to the basis

of award falls within the principle laid down in the case of *Broadstreet* v. *Hall* (1904), 32 Ind. App. 122. The fourth instruction properly contains a statement of the facts upon which appellee relies.

The fifth instruction is as follows: "The burden is on the plaintiff to satisfy you by a fair preponderance of the evidence of the material allegations of his complaint before he would be entitled to a verdict at your hands. If the plaintiff has failed to satisfy you, by a fair preponderance of the evidence, of the truth of any of the material allegations of the complaint, then your verdict should be for the defendant, but if the plaintiff has established to your satisfaction, by a fair preponderance of the evidence, the truth of all the material allegations of his complaint, then your verdict should be for the plaintiff and you should award him such damages as in your judgment will fairly compensate him for the injury he received, not, however, to exceed the sum of $10,000." In the case of *Broadstreet* v. *Hall, supra,* the court, after stating directly to the jurors what facts were proper for them to consider in determining the amount of damages they would award appellee, in case they found for her, added: "And all the facts and circumstances proved in the case." It was the portion of the instruction just quoted which was held by this court to be erroneous. In *Monongahela River, etc., Co.* v. *Hardsaw* (1907), 169 Ind. 147, the court held that portion of the following instruction in italics to be erroneous: "And in estimating such damages, it will be proper for you to take into consideration the injury, if any shown, to his body, as to whether the same is permanent or otherwise, * * * and such damages, if any found, you believe from the evidence he will sustain in view of the direct effect of the injury he received, if any shown, *together with all the facts and circumstances and evidence in the case* and assess his damages at such sum as from the evidence you may deem proper, not exceeding the amount sued for." In *Indianapolis, etc.,*

*Traction Co.* v. *Henderson* (1906), 39 Ind. App. 324, the following portion of an instruction was objected and excepted to: "And your verdict should be in such sum as will compensate him for the pecuniary loss, if any, he has suffered by reason of the accident, not to exceed the amount of the demand, $350." The court held that the instruction, when considered in connection with others enumerating certain elements of damages and material averments which the plaintiff was required to prove by a preponderance of the evidence, did not constitute reversible error.

In the fifth instruction occur the expressions: "The burden is on the plaintiff to satisfy you, by a fair preponderance of the evidence of the material allegations of his complaint, before he would be entitled to a verdict at your hands. If the plaintiff has failed to satisfy you, by a fair preponderance of the evidence, * * * but if the plaintiff has established to your satisfaction, by a fair preponderance of the evidence." It is insisted that the words "satisfy" and "satisfaction," as used, are not equivalent to the word "find." In *Callan* v. *Hanson* (1892), 86 Iowa 420, 53 N. W. 282, it is held that in an instruction directing the jury to return a certain finding, "if, from a preponderance of all the evidence, you are satisfied" that certain facts existed, meant the same as "find" or "believe." "Satisfy," as used in an instruction that the burden of proof was upon defendants to satisfy the jury by a preponderance of the testimony, etc., is used as synonymous with "believe." *Sams, etc., Coupler Co.* v. *League* (1898), 25 Colo. 129, 54 Pac. 642. "Satisfy," as used in a statement that one party to a cause must satisfy the jury of a certain material fact, means to relieve it from all uncertainty or doubt. *Torrey* v. *Burney* (1896), 113 Ala. 496, 21 South. 348. To the same effect is *Cleveland, etc., R. Co.* v. *Best* (1897), 169 Ill. 301, 48 N. E. 684; *Kelch* v. *State* (1896), 55 Ohio St. 146, 45 N.

E. 6, 39 L. R. A. 737, 60 Am. St. 680; *Rosenbaum Bros.* v. *Levitt* (1899), 109 Iowa 292, 80 N. W. 393.

The evidence in the case shows that appellee, at the time of his injury, had been working for the appellant for two weeks, building switches adjacent to the town of Mitchell, and had been prior to that time working on a farm, at a quarry breaking rock for a year, at a cement mill eleven months, where he used a light hand chisel and light hammer in chipping iron—"in chipping off a little rough edge, or something like that"—and for a telephone company. He had had no experience in the use of a large chisel and large hammer in cutting steel, or in the use of a slivered and defective chisel. On the morning of his injury he had been directed to assist the section gang, with which he had never before worked, in taking out an old frog and putting in a new one, and the part of the work he was performing was in helping to bring up the new frog and pushing and pulling it with a crowbar. Others had commenced to take out the old frog by unscrewing the nuts from the bolts, and appellant's foreman had just sent for and procured the slivered and defective chisel that caused appellee's injury and commenced to cut the bolts with it, when the new frog was brought up, and appellee and those assisting him were told by appellant's foreman: "That will do, boys, wait until we get the bolts out," and appellee and those assisting him, stepped back ten or twelve feet, and just then appellee's eye was destroyed by being hit with a flying sliver from the chisel. He had not looked toward or seen the chisel at the time of his injury, or at any time prior thereto, and was not then or had not at any time worked with said chisel, and was not at the time of his injury assisting in the use of said chisel in cutting said bolts. A member of the same gang to which appellee belonged, under the direction of the foreman, got the chisel. He got it off of the hand-car in the hand-car house.

He saw no other chisel, but did not look for any other. The foreman told him to go for the chisel, but did not tell him where he would find it. The foreman testified that the chisel was on the hand-car in the hand-car house; that when chisels were out of repair they were sent to the company's shops and repaired. The foreman also testified that the company had several chisels, but did not testify where they were nor their condition.

Cutting bolts with the slivered chisel was dangerous to appellant's employes, and known to the appellant to be dangerous. The chisel was slivered, defective and dangerous to use at the time it was furnished to appellant's employes to use. Appellant knew the defective condition of the chisel at the time it was furnished for the use which caused appellee's injury.

We have, perhaps with unnecessary particularity, considered the questions discussed in the able brief of appellant's counsel growing out of the instructions given and those refused. We deem it proper, partly in addition and partly by way of repetition, to say that it is the duty of the master to furnish reasonably safe tools for the use of those in his service, and keep them in reasonably safe condition. That the defective condition of the chisel in question was the proximate cause of appellee's injury scarcely admits of doubt. Its selection by a fellow servant would not relieve appellant from liability under the evidence. "The negligence of a fellow servant cannot excuse the employer from his duty to provide reasonably safe tools for his employes and to remedy such defects as might have been discovered by proper inspection."

A higher obligation of inspection rests upon the employer than upon the employe. *Lauter* v. *Duckworth* (1898), 19 Ind. App. 535; *Rogers* v. *Leyden* (1891), 127 Ind. 50; *Boyce* v. *Fitzpatrick* (1881), 80 Ind. 526; *Louisville, etc., R. Co.* v. *Berkey* (1894), 136 Ind. 181; *Ohio, etc., R. Co.* v. *Stein* (1894), 140 Ind. 61. "The lia-

bility of the employer cannot be made dependent wholly upon the size or the complicated or intricate nature of the instrument furnished by it to the employe, but if the instrument be a tool in common use in the employment, and be of such simple character as that here involved, and its actual condition and adaptability be necessarily known to the employe using it, and the danger incident to its use from which an injury occurs to an experienced adult employe be necessarily understood by said employe, the employer's responsibility should not extend to liability for such injury." *Cincinnati, etc., R. Co.* v. *Phinney* (1906), 38 Ind. App. 546.

But the evidence in this case does not present such a situation. The employe in the case at bar did not use the tool, did not see it, and had no knowledge from inspection or otherwise of its condition. Where an employe, free from contributory negligence, is injured because of the defective condition of an implement placed in the hands of another employe by the master and used near the injured servant, however simple it may be in its construction, that simplicity will not of itself deprive the injured servant of a remedy, nor relieve the master from liability. A different rule might prevail if the instrument were used by the party injured. Thus it is stated in the syllabus to *Hefferen* v. *Northern Pac. R. Co.* (1891), 45 Minn. 471, 48 N. W. 1: "A master who provides and keeps proper tools for the use of his servants, whose duty it is to select such as they require for their work, is not in general responsible if a servant voluntarily uses a tool which has become obviously defective and unfit for use, and is injured by reason of such defect." Section 8017 Burns 1908, Acts 1893, p. 294, §1, relating to personal injuries suffered by an employe while in the service of a railroad corporation, provides that every railroad operating in this State shall be liable for damages for personal injury suffered by an employe while in its service, the employe so injured being in the exercise of due care and diligence when "such injury is

suffered by reason of any defect in the condition of ways, works, plant, tools and machinery connected with or in use in thé business of such corporation, when said defect was the result of negligence on the part of the corporation, or some person entrusted by it with the duty of keeping such way, works, plant, tools or machinery in proper condition.'' We think the evidence brings the case within the statute.

Judgment affirmed.

Hadley, P. J., Rabb and Watson, JJ., concur. Roby, C. J., and Myers, J., dissent.

## DISSENTING OPINION.

ROBY, C. J.—The negligence relied upon as establishing liability is the furnishing of a defective chisel by appellant for the use of its employes and the failure to inspect the same. One stated ground for a new trial was that the verdict was not sustained by sufficient evidence. The basis for liability is negligence. A cold-chisel is a tool designed for use in the manner in which the one in question was being used, *i. e.*, held against the iron to be cut and struck by a hammer. That there is an element of danger in the process is a matter of common knowledge. That the chisel may be splintered by the blows against it is likewise true. When the master furnishes a proper chisel, and provides for its replacement or repair when, required, he has done everything which can be exacted of him. The manner of holding and striking the chisel and the time to lay it aside are details of such nature as must ordinarily be left to those who use the tool. Appellant provided a supply of suitable chisels, and the fact that one of them was used by its employes after it had become battered does not sustain a charge of negligence. The motion for a new trial was therefore well made. *Cincinnati, etc., R. Co.* v. *Phinney* (1906), 38 Ind. App. 546; *Bier* v. *Jeffersonville, etc., R. Co.* (1892), 132 Ind. 78.

Appellee, without the slightest fault, has lost an eye. The instincts of humanity and the soundest policy unite in demanding that the burden of such misfortune be not solely borne by the unfortunate individual, but that it be to some extent shared by the business· in the carrying on of which it occurred. But the law in its present state does not permit a recovery, and the judgment should be reversed. The hardship of such conclusion illustrates with force the necessity for legislation fixing the reciprocal rights of employer and employe.