DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1913.

---

## James M. Barrett, Plaintiff in Error, v. Chicago Bridge & Iron Company, Defendant in Error.

### Gen. No. 17,612.

1. MASTER AND SERVANT—*when servant assumes risk.* Plaintiff, who was injured when a piece of steel flew into his eye from a drift pin which he was driving, will be held to have assumed the risk where it appears that he was 19 years of age and intelligent; that he saw that the pin in question was battered, and that he knew from his experience or should have known that blows on the frayed head of a pin would probably cause small pieces of steel to fly off.

2. MASTER AND SERVANT—*when not error to refuse to permit plaintiff to testify that he did not know that steel flew from a drift pin.* It is not error to refuse to allow plaintiff, in an action for an injury received when a piece of steel flew into his eye from a drift pin he was driving with a sledge hammer, to testify that he did not know that steel ever flew from a pin or was likely to, where he was 19 years of age, had nearly completed the eighth grade of the grammar school, had often seen workmen drive pins, some of which were battered, and he knew that the pin in question was battered and frayed over.

Error to the Circuit Court of Cook county; the HON. GEORGE A. CARPENTER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed May 29, 1913.

(204)

**Statement by the Court.** This is an action brought by James M. Barrett, plaintiff, against Chicago Bridge & Iron Company, a corporation, defendant, to recover damages for the loss of his right eye while he was in the employ of defendant in December, 1902. The case has been tried twice. On the first trial the jury found the defendant guilty and assessed plaintiff's damages at $17,000, but a new trial was granted. On the second trial in October, 1909, the court, at the conclusion of plaintiff's evidence, instructed the jury to find the defendant not guilty, which they did, and judgment was entered for the defendant. Plaintiff seeks by this writ of error to reverse the judgment.

The facts are substantially as follows: The defendant was engaged in the business of assembling the parts of and building steel bridges, taking apart old bridges and building large steel retorts or tanks, and at the time of the accident was building a steel retort over 100 feet long and about seven feet in diameter. The retort was being constructed in defendant's shop in fifteen-foot sections, which sections were to be afterwards fastened together at the place where the retort was to be used. Each fifteen-foot section was constructed of three sheets of steel of equal lengths and five feet wide. Each sheet, when rolled and the edges brought and riveted together, made a hollow cylinder five feet long and about seven feet in diameter, and formed a five-foot section of the retort. The five-foot sections were laid end to end, but not overlapping. In bringing the ends together they were slipped into "butt-straps" in such a way that there was a butt-strap inside and outside where the sections came together. Around each end of a section there were several rows of holes and corresponding holes in the butt-straps, through which rivets were to be driven, but before this could be done it was necessary to bring the holes exactly opposite each other. This was done

by driving, by means of sledge hammers, "drift pins" into the holes, both from the inside and from the outside of the retort, and then knocking them out again. These drift pins were of steel, thicker at one end than at the other, about seven inches long and about one inch in diameter at the thickest part. At the time of the accident plaintiff and a co-laborer named Wright were inside of one of the fifteen-foot sections, driving drift pins towards the outside, "lick and lick about," and as plaintiff struck the head of one of the pins with his hammer a piece of steel, presumably from the head of the pin, flew into plaintiff's right eye and destroyed it. The pins had been started in the holes by the foreman, and plaintiff and Wright had been ordered to drive them in. They were both old and new. Some of them had been so used that the end which received the blows of the hammer had frayed over like a burr or rose. Although plaintiff, when he was injured, was at work three feet on the inside of the section of the retort, he testified that it was light enough for him to see the heads of those pins driven from the inside and the small ends of those driven from the outside, and that he did not remember of failing at any time to strike fair with his hammer. Plaintiff was 19 years old, intelligent and well educated. He ceased going to school when 17 years of age, having nearly completed the eighth grade of grammar school. He worked for one concern for three months, operating an electric power machine, cutting steel and metal pipes. He was first employed by the defendant about 1½ years before the accident for three months. During that time he worked both in the yard and in the shop, bolting angle irons together, cutting off pieces of iron, operating a dishing machine and other machinery, and saw "hundreds and hundreds of pins" lying around on the floor, some with the large ends more or less battered, and saw workmen pick them up, insert them in holes and drive

them in with sledge hammers. About six months before the accident he was again employed by the defendant, doing work as ordered. He assisted in dismantling old bridges, cutting off rivets with chisel and hammer. While so employed he frequently went into the shop where the riveting was being done on the retort in question, saw the workmen driving the drift pins and saw many pins, some new and some with battered heads, lying about on the floor. On the third day before the accident he was set to work in the shop "running reamers," a short distance away from the place where the men were driving drift pins, saw the men use pins with battered heads, new pins and repaired pins, and saw other men take some of the pins with battered heads to the blacksmith shop of defendant to be repaired and return with other pins. The floor was "pretty well covered with drift pins." Plaintiff testified that on the morning of the accident he watched the foreman pick up certain drift pins from the floor and put them in the holes of the section of the retort; that he saw that some of the pins picked up and put in the holes were battered and frayed at the head and that some were not; that when the foreman told him to drive the pins with Wright he made no reply but picked up a hammer and commenced driving the pins; that he knew it was simply a question of taking a sledge hammer and driving the pins; that he and Wright had struck two blows each on the particular pin just before the accident; that the head of the pin was in "plain view," was battered down, and the "battered part was projecting out over the edge and peeling down like the skin of a banana."

WILLIAM E. MASON, JOHN C. KING and JAMES D. POWER, for plaintiff in error.

FRANK M. COX and R. J. FELLINGHAM, for defendant in error.

Mr. Presiding Justice Gridley delivered the opinion of the court.

Counsel for plaintiff first contend that the trial court erred in instructing the jury at the close of plaintiff's evidence to find the defendant not guilty. It is argued that plaintiff, when injured, was driving the drift pins in obedience to an order from the foreman of defendant, that under the circumstances plaintiff did not assume the risk of being injured by a flying chip of steel, and that the case was one for the jury. The doctrine of assumed risk has a well recognized exception in cases where the servant is .ordered by his master to perform work which is dangerous and where the servant does not appreciate the risk of performance. But this exception does not apply where the servant has full knowledge of the danger. "It is only where the servant has been misled by the order of the master that the exception exists." *Republic Iron & Steel Co. v. Lee,* 227 Ill. 246, 259. "All persons of mature years and ordinary experience, and endowed with their natural faculties, must be held to understand the ordinary laws of nature, such as that water will run down hill, a falling body will strike the ground, etc., and it must be presumed, when such persons have knowledge of obvious defects in appliances or places with or in which they are engaged in performing· ordinary labor and with which they are entirely familiar, they will also comprehend the natural and probable results which will follow from a use of such appliance or from work-- ing in such place." *Montgomery Coal Co. v. Barringer,* 218 Ill. 327, 332. In this case plaintiff was employed to perform labor which did not necessitate technical or especial skill. When he was ordered to drive the drift-pins in the retort he knew exactly what was required of him. An understanding of natural laws and strength of body was all that was necessary. He had observed other workmen engaged in that labor. He had frequently seen the drift-pins lying on the floor,

some new and some with heads frayed. He had seen pins taken to the blacksmith shop to be repaired. He knew that repeated blows on the head of a pin by sledge hammers would cause the heads to fray over. He had previously been engaged in cutting steel with a cold chisel and hammer and knew that chips of steel would occasionally fly off. He knew, or ought to have known, that continuous blows on the frayed head of a pin would probably cause small pieces of steel to fly off. The danger of accident was remote, but the possibility of chips of steel flying was obvious. The sledge hammer which plaintiff was using at the time of the accident was in good repair. The particular pin struck was seen by plaintiff to be "peeling down like the skin of a banana." It was not necessary to continue striking that particular pin. Other pins were lying near at hand and the particular pin could have been replaced by another in better condition. In *Illinois Cent. R. Co. v. Brown,* 107 Ill. App. 512, Brown was a common laborer in a section gang. It became necessary to cut off a part of a flange of an ordinary rail and he was ordered by the foreman to assist in that work, to which he made no objections. While the foreman held the chisel on the rail, Brown struck the chisel with a hammer and a small particle of steel flew from the rail into one of Brown's eyes and destroyed it. It was held that he could not recover, even on the hypothesis that the doing of this particular work was outside of the line of his regular work, and for the reason that the risk was quite as obvious to him as it could be to any one. In *Webster Mfg. Co. v. Nisbett,* 205 Ill. 273, Nisbett and a helper were working together in the shop of their employer. The helper was using a common tool, known as a "backing hammer," the face of which had become somewhat chipped and out of repair. As the helper struck a blow, a small particle of steel hit one of Nisbett's eyes, destroying the sight. It was held that the court erred, under the facts in evidence, in

not directing a verdict of not guilty, even though it appeared that Nisbett had, previous to the accident, made complaint to the foreman as to the condition of the tool and the foreman had promised to have it fixed, coupled with an order to continue work with the tool. In *Herricks v. Chicago & E. I. R. Co.*, 257 Ill. 264, 267, it is said: "It is the law that the master is not liable for a defect in a simple, ordinary tool procured and provided in the ordinary way. It is one of the essential facts to be proved by a servant seeking to recover on account of a defective tool or appliance, that he did not know of the defect and had not equal means with the master of knowing of it; (*Goldie v. Werner*, 151 Ill. 531); and as to a simple tool the opportunities of the servant for knowing of the defect are at least equal to those of the master. If the tool is procured by the master from another and there is a latent defect, neither one would know of it and the master would not be liable, and if there is a patent defect the servant has as good an opportunity to know of its existence as the master. This rule includes all common tools and appliances, such as hammers, wrenches, axes, hoes, spades and ladders. * * * Neither is the master bound to inspect simple tools furnished to his servant to discover whether defects appear in the course of their use. * * * If any defect should appear in the course of use of such tool, the servant using it would have a better opportunity to discover it than the master. An exception, however, has been recognized in cases where the master has manufactured the tool under such circumstances that there is no equality of knowledge between him and his servant. * * * In such a case the servant may say that he not only did not know but did not have equal means with the master of knowing of the defect."

We are of the opinion that under the facts of this case the court did not err in instructing the jury, at the close of plaintiff's evidence, to find the defendant not

guilty.   Reference may also be made to the following cases: *Miller v. Erie R. Co.,* 21 App. Div. (N. Y.) 45 (a push-pole); *Wachsmuth v. Shaw Electric Crane Co.,* 118 Mich. 275 (a snap-hammer, for use in riveting); *Cincinnati, H. & D. R. Co. v. Phinney,* 38 Ind. App. 546 (a steel punch, which, by long use, had become burred or split); *Hefferen v. Northern Pac. R. Co.,* 45 Minn. 471 (a side-set, the head of which had become worn and battered); *Campbell v. Gillespie Co.,* 69 N. J. Law 279, 282 (a drift-pin with a frayed head).

Counsel for plaintiff further contend that the trial court erred in refusing to allow plaintiff to testify that ''up to the time he received the injury he did not know that chips of steel, or pieces of steel of any kind, ever flew from a drift pin, or were likely to fly from a drift pin,'' thereby causing injury.   Assuming that the plaintiff would have so testified had the court allowed him to, we are of the opinion that under the facts of this case the court did not err in the rulings complained of.   In view of plaintiff's age and education, and his experience in defendant's shop, as disclosed from the evidence, we do not think he can be heard to say that he did not know that driving a steel drift pin, frayed over and ''peeling down like the skin of a banana,'' with a heavy sledge hammer into the holes of the section of the retort in question, was liable to cause a piece of steel to fly off.   *Gillaspie v. United Iron Works Co.,* 76 Kan. 70; *King v. Morgan,* 48 C. C. A. 507, 109 Fed. Rep. 446, 448.   The possibility of pieces of steel flying off under such circumstances was obvious, and knowledge of such conditions ''carries knowledge of the danger and the risk is assumed.'' *Elgin, J. & E. R. Co. v. Myers,* 226 Ill. 358, 365; *Christiansen v. Graver Tank Works,* 223 Ill. 142, 149.

The judgment of the circuit court is affirmed.

*Affirmed.*