## INDIANA NATURAL AND ILLUMINATING GAS COMPANY
### *v.* MARSHALL.

[No. 2,524. Filed Dec. 20, 1898. Rehearing denied March 29, 1899.]

MASTER AND SERVANT.—*Defective Appliances.*—The master is chargeable with knowledge of defective appliances furnished a servant. *p. 124.*

SAME.—*Defective Appliances.—Inspection.*—The duty of inspecting appliances furnished by the master does not lie equally upon the servant and the master, as the servant has the right to rely upon the master doing his duty in the furnishing of safe appliances, unless the defect is such that an ordinarily prudent person would observe it. *p. 124.*

SAME.—*Assumption of Risk.—More Hazardous Work.*—The implied assumption by a servant of the risks incident to the particular work he is employed to do does not extend to more hazardous work outside of his contract of hiring, unless he voluntarily goes into such hazardous work. *pp. 125, 126.*

JUDGMENT —*Complaint.— Variance.*—A judgment will not be set aside for the reason that answers to interrogatories show that the general verdict is based upon a different state of facts than those alleged in the complaint, where such answers show in effect the same state of facts as those alleged. *pp. 127, 128.*

MASTER AND SERVANT.—*Defective Appliances.—Trial.—Finding.*— An inexperienced person may use a defective tool without experiencing any trouble in its use, and without discovering its defects; and a finding by the jury that plaintiff had used appliances, alleged to be defective, prior to the time of the injury complained of is not

inconsistent with the conclusion in the general verdict that he was ignorant of the defect.  *pp. 128, 129.*

MASTER AND SERVANT. — *Disregard of Master's Instructions.*— *Vice-Principal.*—Where one employs another and instructs him personally not to do certain dangerous work, it is the duty of the person so employed to disregard an order of a vice-principal to do such work; and if he disregards the instructions of the master, and follows the orders of the vice-principal, he does so at his own risk in so far as the master is concerned.  *pp. 129-131.*

From the Clinton Circuit Court.    *Reversed.*

*John C. Farber,* for appellant.

*Palmer & Palmer,* for appellee.

ROBINSON, J.—Appellant appeals from a judgment awarding damages for personal injuries sustained by appellee. The errors assigned call in question the overruling of the demurrer to the complaint, the overruling of appellant's motions for judgment on the interrogatories notwithstanding the general verdict, for a *venire de novo,* for a new trial, and in arrest of judgment.

The complaint alleges that on and since March 1, 1896, appellant has operated an electric light plant in the city of Frankfort, Indiana; that on said date appellee entered the employ of appellant as a "trimmer"; that his duties were to visit appellant's lamps each day, examine them, and see that they were in proper condition, to replace carbon in lamps when necessary, and to inspect said lamps once each hour when lighted, to see that they were burning properly, and, if any lamp was found not in proper condition, to report that fact to appellant's electrician; that appellee continued in such employ until the 23rd day of July, 1896, when appellant was putting up a new wire which required adjusting at the top of a pole extending twenty-five feet above ground; that appellee was ordered and required by one George B. Marshall, who was appellant's agent and electrician, and whose duty it was in part to maintain the poles and wires in proper condition, to climb said pole to adjust said wire; that such work was no

part of his duty as trimmer, and no part of the duties for which he was employed, and that it was more dangerous and unsafe than such duties, and that he was inexperienced in climbing electric light poles, and in the proper construction of spurs for use in such climbing; that said pole was planted in a leaning position, and extended upward through the limbs of a tree, which limbs were so around and about said pole as to compel him to climb upon the under side thereof; that appellant furnished appellee spurs to attach to his feet with which to climb said pole by striking said spurs into said pole; that said George B. Marshall was authorized to command all employes except one Harry Natcher, who was superintendent, and that said Natcher had notified appellee to obey the orders of said Marshall; that the spurs so furnished by appellant were defectively constructed in that the parts intended to be stuck into the pole by the wearer in climbing were set at an angle of forty-five degrees with the body of iron strapped to the wearer's leg, when it should have been at an angle of five degrees only; that they were constructed of soft metal, so that the points would bend under a man's weight thus making the angle greater, and causing the spurs to loosen from the pole; that in obedience to said orders he climbed said pole, using said spurs, and when about twenty feet from the ground the spurs lost their hold, and appellee fell, causing injuries which are described, and which are alleged to be permanent.

It is further averred that appellee fell because the pole was leaning, and the spurs were defectively constructed, which fact appellant knew; that appellee did not know the spurs were defectively constructed, and did not know it was more hazardous to climb a leaning pole than one standing upright; that the duties of trimmer were not hazardous or dangerous, and that climbing poles and adjusting wires thereon is especially so to persons unaccustomed to such work; that appellant knew appellee was unaccustomed to climbing poles and adjusting wires; that said injury resulted from the wrongful conduct of appellant in permitting said

pole to remain in a leaning position surrounded by the limbs of a tree and in requiring appellee to use said defectively constructed spurs, and that said injury was without fault or negligence on appellee's part.

It is argued by appellant's counsel that, while the complaint avers generally that appellant knew that the spurs were defectively constructed; and that appellee did not not know that fact, it does not aver that appellee did not know of the defect and had not equal means of knowing with appellant. This is not a case where a proper appliance was furnished, which afterwards became defective while being used by the servant, but the appliance was defective when first furnished, and of such defect appellant is chargeable with knowledge. The duty of inspection does not lie equally upon the servant and the master, because the servant has the right to rely upon the master doing his duty in the furnishing of safe appliances, unless the defect is such that an ordinarily prudent person would observe it. The complaint alleges that the spurs were not only set at a wrong angle, but that the material was soft, and would bend under a man's weight. In such case the master undertakes that the appliance is fit for the use to which it is to be put, so far as ordinary care and prudence can discover. *Baltimore, etc., R. Co.* v. *Amos,* 20 Ind. App. 378. Thus in *Louisville, etc., R. Co.* v. *Buck,* 116 Ind. 566, the court said: "While the employer may expect that an employe will be vigilant to observe, and that he will be on the alert to avoid all known and obvious perils, even though they may arise from defective tools and machinery, * * * yet the latter is not bound to search for defects or inspect the appliances furnished him to see whether or not there are latent imperfections in or about them which render their use more hazardous. These are duties of the master, and unless the defects are such as to be obvious to any one giving attention to the duties of the occasion, the employe has a right to assume that the employer has performed his duty in respect to the implements and machinery furnished. *Brad-*

*bury* v. *Goodwin*, 108 Ind. 286; *Little Rock, etc., R. Co.* v. *Leverett*, 48 Ark. 333, 3 S. W. 50; *Ft. Wayne, etc., R. Co.* v. *Gildersleeve*, 33 Mich. 133; *Hughes* v. *Winona, etc., R. Co.*, 27 Minn. 137, 6 N. W. 553; Woods Master and Servant, section 376." And in *Cincinnati, etc., R. Co.* v. *McMullen,* 117 Ind. 439, it is said: "An employe is required to observe and avoid all known or obvious perils, even though they may arise from defective machinery and appliances; but he is not bound to search for defects, or make a critical inspection of the appliances which are provided for his use. These are duties of the employer." *Pittsburgh, etc., R. Co.* v. *Woodward*, 9 Ind. App. 169. It is true as argued by counsel, that if the leaning pole was dangerous, it was a danger open and obvious, and appellee had equal means with appellant of knowing such danger. But it is alleged that the injury resulted from the leaning pole and from the defective spurs. It is also alleged that the spurs were defectively constructed, and that this fact was known to appellant, but was not known to appellee. It is further averred that appellee was inexperienced in climbing electric light poles, and that appellant knew that appellee was unaccustomed to the climbing of poles and adjusting wires thereon. It might be that the defectively constructed spurs would suggest to a person experienced in their use that it would be unsafe to use them, but we cannot say that the defects as described in the complaint were such as would suggest themselves to an inexperienced person about to use them. A defect in the construction of a tool might be obvious to a person experienced in its use, and to one inexperienced it might appear to be properly constructed, and especially is this true of an appliance whose defects are of the nature described in the complaint. It must be borne in mind that the complaint shows appellee was not required to use them in the work which he was regularly employed to do, but that, when injured, he was engaged in work different from his regular employment, and work to which he was unaccustomed. His implied assump-

tion of the risks incident to the particular work he is employed to do does not extend to more hazardous work outside of his contract of hiring, unless he voluntarily goes into such hazardous work. *Pittsburgh, etc., R. Co.* v. *Adams,* 105 Ind. 151.

Appellant's counsel has cited a number of cases to the effect that, where the apparent danger is such that a person of ordinary prudence, exercising that prudence, would refuse to encounter it, he proceeds at his peril, although ordered to do work out of the line of his employment. But, as we have said, we cannot say in the case at bar that the defects in the spurs as described in the complaint were such that a person unaccustomed to their use would be held to have known. There was no error in overruling the demurrer to the complaint.

With the general verdict the jury answered certain interrogatories to the effect that appellee, by the use of his eyesight, could have discovered that the pole was leaning, and that branches of a tree obstructed free passage up the pole on the upper side; that he had as good an opportunity to discover this as appellant, and that he knew the pole was leaning and obstructed as aforesaid; that the spurs used by appellee were not sound and fit for the purpose intended, so far as ordinary prudence could discover; that appellee did not have as good opportunity to see and observe the character and the then present condition of the spurs as appellant; that appellee had had very little experience in climbing electric light poles; that the spurs used were defective, in this: "Spurs were beveled on wrong side, and set too low on shank;" that appellee had used the same spurs in climbing poles for appellant prior to the time of his injury; appellee could not by the use of ordinary diligence have seen the defects in the spurs prior to the time of his injury; appellant had knowledge of the defect in the spurs; that, on the 23rd day of July, Harry Natcher was superintendent of appellant, and had full control of and authority to direct the work of all

the employes of appellant; that Natcher did not, on the 22nd day of July, direct George Marshall and appellee to go out next day and bring in a circuit, and did not direct that George Marshall should climb the pole and appellee work on the ground; appellee was not during the first week of July, ordered by Natcher to come down from a pole, and take off the climbing spurs, and in the future work on the ground; that Natcher notified and directed appellee subsequent to May 1, 1896, and prior to the injury, that he should work upon the ground; that George Marshall had authority from appellant at the time of the injury to command appellee and direct him in his work; that at the time he was injured appellee was not doing the kind of work covered by his contract of hiring.

It is argued by counsel for appellant that his motion for judgment on the answers to the interrogatories should have been sustained, for the reason that the answers show that the general verdict is based upon a different state of facts than those alleged in the complaint; that the jury found that the defects in the spurs, as alleged in the complaint, did not exist, because in specifying the defects they specify other and different ones. The rule is well settled that a plaintiff, in order to recover, must prove all the material allegations of his complaint, and that he cannot recover upon a state of facts different from those alleged, although the facts proved may make a case; that a plaintiff must recover *secundum allegata et probata* or not at all. The reason for such a rule is that a defendant cannot be brought into court and required to disclose his grounds of defense to one state of facts, and a judgment rendered against him upon a different one. He is entitled to know what he is required to meet. But in the case at bar, upon the particular matters, the appellant was charged with having furnished an employe with defective spurs. It is true, the defect the jury finds existed in the spurs is different from the defects alleged in the complaint. The complaint charged that the defect, in part, was the man-

ner in which the spurs were set on the iron shank, and the jury finds, in effect, the same thing. The complaint charges, and the jury finds, that the spurs were not properly set on the iron shanks. Appellant's attention was called, by the complaint, to the fact that the spurs were not properly set, and the jury so finds. The defect is not described in exactly the same way, but it would be a strained construction to say there was a fatal variance. It would not be contended by appellant's counsel that appellee must prove all the different defects in the spurs alleged in his complaint. He must prove the spurs defective substantially in the manner alleged, and this the jury finds he did.

As we have seen, the complaint alleges that appellee was inexperienced in climbing poles, and ignorant of the use of spurs. In answer to interrogatories the jury found that appellee had had very little experience in climbing electric light poles prior to the injury, and that he had used the same spurs in climbing poles of appellant prior to the injury. It is argued that by these answers it is shown appellee knew of the defects in the spurs, if they existed, because he had used them and had equal means with the master of knowing of the defects, if they existed. The appellee himself testified that he had noticed this particular pole several times, and knew that it was leaning, and, knowing this he put on the spurs and tried to go up it. He further testified that between the 1st of March and the 23rd day of July, he had climbed eight or ten poles, "not over ten poles;" that these particular spurs were the only pair he remembered of ever having on, and that every time he had climbed he had climbed with these spurs. He further testified that he was ordered to put the spurs on, that he knew nothing about the shape the spurs ought to be, or their quality, and that he had never paid any attention to spurs at all. The witnesses are all agreed that the defects in the spurs—the position in which the spurs were set—caused them to pull out of the wood when in use, and that the metal was soft, causing the points to blunt, thus

preventing them from readily entering the wood. In other words, the effect of all the evidence upon that point is that in the use of the spurs their defects would probably become apparent. It does not appear that appellee made any objection to using these spurs. He did object to climbing the leaning pole. For four or five days prior to the injury appellee was not working as a trimmer, but was working on the line helping to stretch wire; and he testifies that once in a while before that he had helped at putting up lines and adjusting wires. There is no evidence in the record showing that appellee, when using these spurs as he testified, ever objected to them on account of their defective construction, or that he ever experienced any trouble in their use. But an inexperienced person might for a time use a defective tool, of which defect he was ignorant, without experiencing any trouble in its use, and without discovering its defect. From the evidence it is clear the spurs could be used, and had been used, for some time, and it was possible for appellee to use them a number of times without discovering anything wrong in their construction. The fact that the jury find that he had used the spurs prior to that time is not necessarily inconsistent with the jury's conclusion in the general verdict that he was ignorant of the defect. Due regard must be had in such cases concerning the intelligence and experience of the person employed in relation to the implement with which he is required to work.

Whether appellee, when injured, was not engaged in work he had been instructed not to do presents a more serious question. The jury found that Harry Natcher on the 23rd day of July, 1896, and for more than six months prior to that date, was appellant's superintendent, and had full control of and authority to direct the work of all employes of appellant during the time from July 19 to July 26, 1896; and that Natcher, subsequent to May, 1896, and prior to the injury, notified and directed appellee that he should work

upon the ground. Natcher testified that about the first week in July appellee was assisting in putting up a line, and had climbed a pole, and that he (Natcher) saw he could not climb, and ordered him to come down, and take off the spurs, and give them to another workman, which he did; and that he (Natcher) told appellee at that time that in the future he was to work on the ground. Three other witnesses testified to the same thing. Appellee admits that Natcher told him to come down from the pole, and take the spurs off, and give them to another workman, and that he did so; but said he had no knowledge of Natcher saying anything about working on the ground in the future. So that there was abundant evidence upon which to rest these answers by the jury. It thus appears from these answers that appellee, when injured, was engaged in work which he had been instructed not to do by appellant's superintendent. It is argued, however, by appellee's counsel, that George Marshall, who ordered appellee to climb the pole when injured, was a vice-principal, and had authority to give instructions to employes by reason of a notice which had been posted in appellant's building which read: "On and after May 1st, all employes of the electric light company will look to George Marshall for instructions. (Signed) H. D. Natcher." Appellee testified, in answer to a question whether Natcher gave him orders to obey anybody else, that "he didn't give me orders directly himself."

The evidence is undisputed that if George Marshall had authority to direct appellee to do certain work, and the jury answered that he had, he got the authority from Natcher. The question then arises whether the general instructions given all the employes by the superintendent on May 1st to look to George Marshall, who had charge only of certain work, for instructions, or the special instructions given appellee by the superintendent afterwards as to particular work, should control as to that particular work. It is not shown by the jury's answers, or by any evidence, that the

special instructions given appellee about the 1st of July, that he should work on the ground, were ever rescinded or in any way modified. The authority Natcher gave Marshall over appellee could be revoked in whole or in part, and the verdict certainly shows that appellee had instructions from the superintendent himself not to do the very work he was doing when injured. Appellee knew that Marshall's authority was derived from Natcher, and from the jury's answers we must conclude that Natcher had given him special instructions to work on the ground. If a master employs a servant, and instructs him personally not to do certain dangerous work, it is his duty to disregard an order of a vice-principal to do that particular work; and if he chooses to disregard the instructions of the master, and follow the orders of the vice-principal, he does so at his own risk, so far as the master is concerned. An employer may have good reason for directing a particular employe not to do certain work, and, when such instructions have been given the employe has no cause of complaint if injured in consequence of such disobedience. A foreman or vice-principal has no authority to place a liability upon the principal which the principal has expressly declined to assume. And if an employe, as in the case at bar, chooses to disregard special instructions of his principal, and follow those of a vice-principal under authority previously given, he must do so at his own risk. It is true that ordinarily the employe has the right to look to his immediate superior for directions in his work, but this rule cannot be held to apply to a certain kind of work, where the master has given the employe personal instructions not to do that particular work.

Taking the answers to the interrogatories together with the evidence upon which they are based, we do not believe that the general verdict and the answers to the interrogatories should stand; but that the interests of justice would be best subserved by granting a new trial. Judgment reversed, with instructions to sustain appellant's motion for a new trial.

Henley, J., absent.