(39 App. Div. 188.)

### DALY v. LEE et al.

(Supreme Court, Appellate Division, Fourth Department. March 22, 1899.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—DEFECTIVE TOOLS.

While driving lumber along the sides of a sewer trench to uphold its walls, the beetle used flew off the handle, injuring a workman in the trench below. The beetle was made of green elm timber. When the contractor's superintendent procured the timber to make the beetle, the contractor's chief carpenter told him it was too green for the purpose, and the blacksmith who put the rings on it testified that the wood was so green that the sap ran from it. The handle was of seasoned hard wood, and a blacksmith testified that hard-wood handles working in the soft heads of mauls would become loose. *Held*, that it was error to grant a nonsuit in an action against the contractor to recover for the injuries to the workman in the trench.

2. SAME—ASSUMPTION OF RISK.

The rule that a workman assumes the risk from defects in simple tools, of which the workmen are as good judges as the master, does not apply to defects in tools used by fellow servants.

3. SAME—EXPERT TESTIMONY.

On an issue whether a tool constructed by a master for the use of his servants was made of defective material, the mechanics employed by the master to make it are competent to testify whether the material used was fit for the purpose.

Action by James Daly against John R. Lee and another. Plaintiff was nonsuited, and his exceptions were ordered to be heard by the appellate division in the first instance. New trial.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

James P. O'Connor, for plaintiff.
George F. Yeoman, for defendants.

FOLLETT, J. This action was begun October 27, 1897, to recover damages for a personal injury, caused, it is alleged, by the negligence of the defendants. In June, 1897, the defendants were engaged in constructing the West Side sewer, in the city of Rochester, having in their service a large number of common laborers and several mechanics, who were under the control of Mr. Clements, the superintendent of the work. June 4, 1897, the plaintiff was shoveling earth at the bottom of a trench about 15 feet deep. Above him one of the defendants' laborers was engaged in driving lumber down by the side of the trench, presumably to keep its sides from caving in. The driving was done with a wooden maul or beetle, bound on each end with an iron ring. When the laborer struck a blow with the beetle, its head came off from the handle, and hit the plaintiff on the head, inflicting a serious injury, from which, at the time of the trial (February 3, 1898), he had not recovered. The contention of the plaintiff is that the defendants made the head of the beetle out of green elm timber, which would not hold the handle securely, and for that reason was unfit for the purpose for which it was used. Two carpenters in the employ of the defendants on the work testified that they made the beetles by sawing blocks about a foot in length from a stick of green elm timber about 10 inches square, which blocks were then rounded so that the ends would receive iron rings; that an inch or an inch and a half hole was bored through the heads to receive the handles, and then the beetle heads so formed were sent to defendants' blacksmith to iron and handle them. Before the beetles were ironed they weighed from 12 to 15 pounds, and after they were finished from 20 to 25 pounds. The defendants' head carpenter testified that defendants' superintendent, Clements, procured a green elm stick for the purpose of having beetles made therefrom. He said: "I told Mr. Clements that the lumber was not fit for that business,—it was not dry enough,—and Clements said that was the best he can do; they were in a hurry for the beetles, and had to have them. * * * I told him the head was too green." The blacksmith who put on the rings and inserted the handles testified that, when wedging the beetle heads, they were so green that the sap or water ran from them. The handles to these beetles were made from seasoned hard wood, and the defendants' blacksmith testified that the hard-wood handles working in the soft heads would enlarge the hole in which the handle was inserted, and cause it to become loose. This uncontradicted evidence would have supported a verdict that the defendants did not use due diligence in furnishing proper and safe beetles for their servants, and that by reason thereof the accident occurred. It is said that a beetle is such a simple tool that the servants were as good judges of its condition as the master, which is undoubtedly true. But this accident did not happen to one who was using the tool, or who had had an opportunity to know its condition, but to a person engaged in shoveling 15 feet below where the blows were struck with the beetle, which, so far as it appears, the plaintiff had never seen. Besides, a workman who had never used a beetle except for about two days was directed to strike the blows, and he had not such knowledge of the instrument as would

have justified him in refusing to use it, as against the direct order of the foreman. The evidence is not sufficient to charge the laborer who struck the blows with negligence, and the evidence shows that the plaintiff did not contribute to the accident. This case is not like those where a master has furnished tools of apparently good quality, manufactured by others, but it is a case which arises from a tool manufactured by the master, who had knowledge of the defective material used. There were some rulings which we regard as erroneous. The mechanics who were employed by the defendants to make the beetles were competent to testify whether the material used was fit for the purpose.

Plaintiff's exceptions sustained, and the motion for a new trial granted, with costs to the plaintiff to abide the event. All concur.