## AMERICAN CAR AND FOUNDRY COMPANY *v.* NACHAND, BY NEXT FRIEND.

[No. 7,167. Filed February 23, 1911.]

1. MASTER AND SERVANT.—*Tools.—Duty of Master.*—It is the duty of a master, in furnishing simple tools to a servant, to see that they are in good condition, and for a failure thereof, resulting in such servant's injury, the master is liable; but if such tools become defective while in the hands of the servant, resulting in injury to such servant, or to a fellow servant, the master is not liable. p. 207.

2. MASTER AND SERVANT.—*Tools.—Duties of Inspection.—Notice of Defects.—Constructive.*—It is not the duty of a master to inspect simple tools used by servants in the course of their employment, and a master is not chargeable with constructive notice of defects in such tools, caused by use. *Baltimore, etc., R. Co.* v. *Amos,* 20 Ind. App. 378, and *Indiana, etc., Gas Co.* v. *Marshall,* 22 Ind. App. 121, distinguished. *Baltimore, etc., R. Co.* v. *Walker,* 41 Ind. App. 588, overruled. pp. 207, 210.

3. MASTER AND SERVANT.—*Intricate Tools.—Duties of Inspection.*—It is the duty of a master to inspect intricate or complex tools, and for defects in such tools, caused by use, the master is liable. p. 208.

4. MASTER AND SERVANT.—*Tools.—Defects.—Assumption of Risk.*—A servant using a back-out punch, knowing it to be loose on the handle, assumes the risk of danger therefrom, especially where good tools were furnished, where the master's rules required defective tools to be taken to the repair shop, and where the punch had become defective through use. p. 208.

5. MASTER AND SERVANT.—*Negligence.—Defective Tools.—Fellow Servants.—Assumption of Risk.*—A servant does not assume the risk of dangers from simple tools, defective from use, of which he is not aware, while in use by fellow servants, but as the mas-

ter owes no duty in relation thereto, no negligence is chargeable to such master. p. 209.

6. MASTER AND SERVANT.—*Tools.*—*Unsafe.*—*Fellow Servants.*—*Assumption of Risk.*—A fellow servant assumes the risk of dangers from tools which become defective from a coservant's use, but not from defects of which he is ignorant, in tools which were defective when supplied by the master. p. 210.

From Clark Circuit Court; *Harry C. Montgomery,* Judge.

Action by Albert Nachand, by his next friend, against the American Car and Foundry Company. From a judgment on a verdict for the plaintiff for $1,000, defendant appeals. *Reversed.*

*M. Z. Stannard* and *Jonas G. Howard, Jr.,* for appellant.
*Thomas J. Brock* and *J. K. Marsh,* for appellee.

LAIRY, P. J.—This is an action for damages for personal injuries. There was a verdict and judgment in the trial court in favor of appellee, and appellant brings the case to this court for review. Sixty-one interrogatories were submitted to the jury and answered.

The material facts disclosed by the answers to these interrogatories are as follows: Appellant was a private corporation engaged in the construction of railway-cars in Clark county, this State. In its plant appellant operated what was known as the "steel department," in which steel cars were constructed. Appellee was employed in this department, and with two fellow workmen was engaged in riveting parts of the cars together. These three workmen had been furnished a set of tools with which to perform their work. Among these tools was what was known as a back-out punch, which was, at the time appellee was injured, in the hands of Henry Kopp. The men were attempting to remove a rivet from the side of a car. Henry Kopp held the back-out punch against the rivet, another workman struck the punch with a hammer, and the back-out punch flew off of the handle and struck the appellee

on the forehead, causing the injury complained of.  The injury was caused by the defective condition of the back-out punch, it being loose upon the handle.  This fact could have been discovered by a casual observation of the punch, and it appears that Kopp had known of said defective condition for two or three weeks before appellee was injured. A moment before the injury, and in the presence of appellee, Kopp attempted to tighten the back-out punch upon the handle, and appellee saw and appreciated that said tool was in a defective condition.  Appellant maintained a tool-house in connection with the car building plant, in which there was, at and prior to the time of the injury, an ample supply of back-out punches which were in good repair.  By appellant's regulations it was made the duty of an employe using a back-out punch, if it became defective, to take it to appellant's tool-room and surrender it to men in charge, whose duty it was to have said back-out punch placed in good order, or to furnish to said employe another back-out punch which was in good repair and fit for use in the work in which said employe was engaged.  Neither appellant nor any of its agents had any actual knowledge of the defective condition of the back-out punch in question at any time before appellee was injured, and no inspection of the punch had been made by any foreman or other agent of appellant at any time after it became loose upon the handle.

Appellant filed a motion for a judgment in its favor on the interrogatories, notwithstanding the general verdict, which motion was overruled, and appellant excepted.  This question was properly saved, and is one of the errors relied on for a reversal of this case on appeal.

The decision of this question must depend upon a proper determination and application of the rules of law governing the duties which the master owed to the servant under the facts disclosed by the answers to the interrogatories.

The tool which was being used by the fellow servant of

appellee, the defect in which caused the injury complained of, was of simple construction. It is the duty of the master, in furnishing such a tool to his servant, to inspect it and see that it is in good condition, and safe and suitable for use at the time it is so furnished. If a master furnishes such a tool to a servant, and it is defective or unfit for the use intended, and the servant is injured by reason of such defect, the master becomes liable, unless the defect is open and obvious; but if the defect is so open and obvious as to charge the servant with notice thereof, and he attempts to use it and is injured by reason of such defect, he is held to have assumed the risk, and he cannot recover. When, however, a tool, which is safe and suitable at the time it is furnished, is placed in the hands of a servant to work with, and, while so in his possession, it becomes unsafe or defective through use, the master cannot be held liable for injuries to the servant using said tool or to a fellow servant, caused by reason of such defect. There is no duty resting upon the master to inspect such tools while they are in the possession and use of the servant, and his failure to make such inspection for the purpose of discovering defects caused by use is not negligence. Under such circumstances, where the master is not shown to have actual notice of such defect, he cannot be charged with constructive notice on the ground that he did not inspect the tool while in the possession of the servant for the purpose of discovering defects caused by use, and that such an inspection, if made, would have disclosed the defect. *Miller* v. *Erie R. Co.* (1897), 21 App. Div. 45, 47 N. Y. Supp. 285; *Gulf, etc., R. Co.* v. *Larkin* (1904), 98 Tex. 225, 82 S. W. 1026, 1 L. R. A. (N. S.) 944;; *Towne* v. *United Electric, etc., Co.* (1905), 146 Cal. 766, 81 Pac. 124, 70 L. R. A. 214; *O'Brien* v. *Missouri, etc., R. Co.* (1904), 36 Tex. Civ. App. 528, 82 S. W. 319; *Marsh* v. *Chickering* (1886), 101 N. Y. 396, 5 N. E. 56.

The reason for the rule just stated is that where the tool

is simple in construction, so that defects therein can be discovered without special skill or knowledge, and without intricate inspection, the servant is as well qualified as any one else to detect defects and to judge of the probable danger of using such tool while defective; and the tool, being in the possession of the servant, his opportunity for inspection is better than that of the master. The application of the rule, however, is no broader than the reason for the rule and it does not apply to machinery of an intricate nature, even though it is in the possession or control of the servant. *Gulf, etc., R. Co.* v. *Larkin, supra; Wachsmuth* v. *Shaw Electric, etc., Co.* (1898), 118 Mich. 275, 76 N. W. 497; *Garnett* v. *Phoenix Bridge Co.* (1899), 98 Fed. 192.

In this case it appears from the answers to interrogatories, that neither appellant nor any of the foremen had any knowledge of the defective condition of the tool which caused the injury to appellee; that the back-out punch was a hand tool of simple construction; that Henry Kopp, the person with whom appellee was working and who had said back-out punch in his possession, had for two or three weeks known of the defect which caused the injury. Under these facts, appellant could not be charged with negligence on account of its failure to inspect said tool while in the possession and use of Henry Kopp, as it owed no duty to appellee, or to any one else to make such inspection to discover defects caused by use. The answers to interrogatories further show that appellant maintained a tool-room in connection with its plant, which was in charge of two men whose duty it was to repair back-out punches which needed new handles; that at all times, when the plant was in operation, there was on hand in this toolhouse a supply of good handles for tools of this kind, and also an ample supply of back-out puches which were in good repair and fit to be used in driving rivets out of steel cars; that by the rules of appellant, it was made the duty of an

employe using a back-out punch, in case it became defective, to take it to the tool-house and surrender it to the men in charge, whose duty it was to have such tool repaired and placed in good condition, or to furnish such employe another back-out punch which was in good repair and fit for use. A servant who uses a defective tool or an improper implement when a suitable one is at hand, cannot complain of the failure of the master to inspect the appliance used. *Hefferen* v. *Northern Pac. R. Co.* (1891), 45 Minn. 471, 48 N. W. 1, 526; *Rawley* v. *Colliau* (1892), 90 Mich. 31, 51 N. W. 350; *O'Brien* v. *Missouri, etc., R. Co., supra.*

It is suggested by appellee that this rule does not apply where the person injured is not the servant using the defective tool, but a coemploye of such servant, and

5. that the injured servant, under such circumstances, cannot be held to assume the risk of a defect in a tool which he is not using, and has had no opportunity to inspect, even though the defect is in a hand tool of simple construction, and the defect is open and obvious. It is true that an employe under such circumstances does not assume the risk of injury caused by a defect in a tool in the hands of a coservant, unless he has actual knowledge of such defect, and he cannot be denied a recovery on the grounds of assumption of risk. In such cases a recovery is denied, on the ground that the injury is not due to any negligence on the part of the master. If the master furnishes a safe tool in the first instance, and places it in the possession of a workman, he is under no duty to inspect it while so in the possession of his servant, for the purpose of discovering defects caused by use; and if it becomes defective during such use, without the actual knowledge of the master, and the servant, in whose possession it is, continues to use it, and, by reason of such defect, a fellow workman is injured, the negligence, if any, is that of a fellow servant and not that of the master. If, on the other hand, a master provides

a tool which is unsafe when furnished to a servant,
6. and, while it is being used in such defective condi-
tion, another servant who has no knowledge of its con-
dition is injured by reason of such defect, the master is
liable for his negligence in providing a defective tool, and
he is not excused because there may have been concurring
negligence of a coservant of the injured party. The in-
jured servant, in such a case, is not precluded from recovery
on the ground of assumption of risk, for the reason that he
has had no opportunity to inspect the tool in the hands of
his coservant. 4 Thompson, Negligence (2d ed.) §4708;
*Daly* v. *Lee* (1899), 39 App. Div. 188, 57 N. Y. Supp. 293;
*Baltimore, etc., R. Co.* v. *Amos* (1898), 20 Ind. App. 378.

It is claimed by appellee that the law which imposes upon
the master the duty to inspect machinery and appliances,
to see that they are kept in safe condition and fit for
2. use, applies also to hand tools of simple construction,
and imposes upon the master the duty of inspecting
such tools while in the possession of his servants to see that
they do not become defective through use or by natural de-
terioration. The following cases are cited from this court
as sustaining this proposition: *Baltimore, etc., R. Co.* v.
*Amos, supra, Indiana, etc., Gas Co.* v. *Marshall* (1899), 22
Ind. App. 121, and *Baltimore, etc., R. Co.* v. *Walker* (1908),
41 Ind. App. 588.

The first two cases relied on can be distinguished. In the
case of *Baltimore, etc, R. Co.* v. *Amos, supra,* the facts
showed that the hammer furnished to the servant was de-
fective at the time it was so furnished; that the handle of
the hammer was a hickory stick with the bark on it, and
that it was worm eaten and decayed under the bark, so as
to render it weak and unsafe for use. The person injured
was not the servant who was using the hammer, but was one
of his coworkmen who had never used the hammer or had an
opportunity to inspect it. As we have before said, it is the
duty of the master to furnish safe tools to his servants, and

it is his duty to inspect them at and before the time he furnishes them, to see that they are fit for use. In the case under consideration, the facts show that the master was negligent in failing to discharge this duty, that the servant was free from fault, and that he had not assumed the risk. In such a case the master is clearly liable.

In the case of *Indiana, etc., Gas Co.* v. *Marshall, supra,* the facts showed that the spurs furnished by the master to the servant were defective at the time they were furnished, and that the servant was inexperienced, and could not and did not discover the defect. Under the circumstances, the servant was held not to have assumed the risk, and the master was held to have been negligent in furnishing defective spurs. There is some language used in the opinions of both of the cases just referred to which would seem to indicate that a master who furnishes a hand tool to a servant is under the duty not only to inspect it for the purpose of seeing that it is safe and fit for use at the time it is furnished, but that this duty is a continuing one, which requires him to inspect such tool while in the possession of his servants to see that it does not become defective and unfit for use through use or deterioration. It was not necessary to extend the rule of inspection to this extent in deciding either of these cases. We do not think the language employed in these opinions, which seems to indicate that it is the master's duty to inspect simple hand tools while in the possession of his servants to see that they do not become defective while in their possession, contains an accurate statement of the law. We think that the better reason and the great weight of authority is on the other side of this proposition. *Miller* v. *Erie R. Co., supra; Gulf, etc., R. Co.,* v. *Larkin, supra; Towne* v. *United Electric, etc., Co., supra; O'Brien* v. *Missouri, etc., R. Co., supra; Marsh* v. *Chickering, supra; Wachsmuth* v. *Shaw Electric, etc., Co., supra; Garnett* v. *Phoenix Bridge Co., supra; Hefferen* v. *Northern Pac. R. Co., supra; Rawley* v. *Colliau,*

*supra; Cregan* v. *Marston* (1891), 126 N. Y. 568, 27 N. E. 952, 22 Am. St. 854; *Webber* v. *Piper* (1888), 109 N. Y. 496, 17 N. E. 216; *Thyng* v. *Fitchburg R. Co.* (1892), 156 Mass. 13, 30 N. E. 169, 32 Am. St. 425; *Carroll* v. *Western Union Tel. Co.* (1893), 160 Mass. 152, 35 N. E. 456; 2 Labatt, Master and Serv. §§590, 603; 1 Bailey, Per. Inj. §268.

In the case of *Baltimore, etc., R. Co.* v. *Walker, supra,* this court seems to have followed the dicta in the two cases to which we have just referred. The court was therefore led to an erroneous conclusion. That case was referred to with disapproval in an opinion by Roby, J., in the later case of *Indiana Stove Works* v. *Howden* (1909), 44 Ind. App. 656. We are unable to reconcile the case of *Baltimore, etc., R. Co.* v. *Walker, supra,* with the decisions of other courts on this subject, which state the law as announced in this decision, and we are not able to distinguish it to our own satisfaction.

If that case correctly holds that the employe who was sent to procure the tool from the tool-house stood in the place of the master, and that his act in procuring the cold-chisel was the furnishing of a tool by the master, then the case is correctly decided, for the reason that it would be the duty of the master, under such circumstances, to inspect the tool to see that it was safe for use before furnishing it. But if the master had originally furnished a number of safe and suitable cold-chisels to employes for use, which afterward, and up to the time of the injury, remained in the exclusive custody and control of said employes, and none of which had even been returned for repair to the master or to any one representing him in providing said tools, and if some of said tools became defective through use, and said employes intermingled the defective cold-chisels with those which were fit for use, in a common receptacle known as a tool-house, which tool-house was not in the custody of any person in the service of the master whose duty it was to provide a tool of this character, and if one of the section men,

who was not charged by the master with any duty to look after or provide tools of this character, was sent to this tool-house to get a cold-chisel, and he selected one that was defective and unfit for use—then the master could not be deemed guilty of negligence because it had not inspected said tools while so in the possession of its servants. There is nothing in the facts disclosed in that case which shows that the cold-chisel which caused the injury was defective when furnished, or that it had not been in the exclusive control of the workmen from the time it was furnished until the time of the injury, or that the tool-house where it was kept was in charge of any person in the service of the master whose duty it was to provide a tool of this character, or that there were no safe and suitable cold-chisels in said tool-house which might have been selected instead of the defective one which caused the injury. We do not think that the facts disclosed in that case were such as to show that the master owed a duty to inspect the cold-chisel, and we disapprove of the reasoning of that opinion, in so far as it is based upon the negligence of the master in failing to inspect the tools while in the possession of the servant.

By the general verdict in the case at bar the jury found that appellant was guilty of negligence as averred in the complaint, in failing to inspect the back-out punch while in the possession of Kopp, who was the fellow servant of appellee. In view of the law as heretofore stated, the answers to the interrogatories are in irreconcilable conflict with the general verdict on this question. The answers of the jury to the interrogatories clearly show that appellant owed no duty to appellee in this respect, and that it was guilty of no negligence. The trial court should have sustained the motion of appellant for judgment on the interrogatories, notwithstanding the general verdict.

In the third instruction the jury was told that it was the duty of the master to exercise reasonable supervision over

such tools, and to exercise ordinary care to keep them in reasonably safe condition for the use of the servant; that the master was required to take notice not only of the deterioration of tools or appliances by continued use, but also of such deterioration by natural or ordinary decay as may be discovered by reasonable inspection in any material which may be provided by him as tools or parts thereof; that the servant had a right to rely upon the master's observance of these requirements and performance of these duties. In the view we take of the law as stated in this opinion, this was not a proper instruction in this case.

The fourth instruction contains a proper statement of the law as an abstract proposition, but as applied to the facts in this case it was misleading and erroneous.

The judgment is reversed, with directions to the trial court to sustain the motion of appellant for judgment in its favor on the answers to the interrogatories.