Argued February 11, affirmed March 9, 1915.

# GEKAS v. OREGON–WASHINGTON R. & N. CO.*

### (146 Pac. 970.)

**Master and Servant—Injury—Complaint.**

1. A reconstruction, as well as the original construction, is embraced in the allegation of the complaint, in a servant's action for injury from a defect in a tool, that it was poorly constructed.

**Master and Servant — Injury — Reconstructed Tools — Question for Jury.**

2. Testimony of a section foreman, injured by an adz breaking, that the company's roadmaster told him he would send him two or three, and that they, including the one in question, which he said had the appearance of having been reconstructed or drawn out, came in a supply car from the company's shops, is evidence from which the jury could determine that it had been reconstructed.

**Master and Servant—Injury—Furnishing Tools—Simple Tools—"Ordinary Care."**

3. "Ordinary care," which is such as the probable danger of injury would suggest to a reasonably prudent man, must be used by the master in furnishing to his employees either simple or complex tools; the only difference being that as to complex tools such a man would use a greater degree of care.

[As to duty of master to servant, see note in 75 Am. St. Rep. 591.]

**Master and Servant—Injury—Negligence—Question for Jury.**

4. ˙ Whether a railroad company's tool sharpener exercised ordinary care in reconstructing an adz, by a defect in which a section fore-

---

*On the question of the master's liability for injury by defect in a common tool, see notes in 13 L. R. A. (N. S.) 668, 40 L. R. A. (N. S.) 832, and 51 L. R. A. (N. S.) 337.

For the different forms of statement of the general rule in respect to the master's duty as to places and appliances furnished to servants, see note in 6 L. R. A. (N. S.) 602.

Upon the duty of the master as to machinery and appliances, see notes in 33 L. Ed. (U. S.) 656, 37 L. Ed. (U. S.) 728, 38 L. Ed. (U. S.) 579, and 40 L. Ed. (U. S.) 767.

As to the constitutionality, application and effect of the Federal Employers' Liability Act, see note in 47 L. R. A. (N. S.) 38.

Reporter.

man, to whom it was furnished after reconstruction, was injured, is a question for the jury there being evidence that while the foreman could not discern any defect when he received the adz, the flaw therein would be perfectly apparent to an experienced tool sharpener when it was heated and reforged at the company's shops, and should then have been cut out.

**Master and Servant—Injury—Federal Employers' Liability Act—Negligence of Other Employees.**

5.    Under Federal Employers' Liability Act of April 22, 1908, Chapter 149, 35 Stats. 65 (U. S. Comp. Stats. 1913, Sections 8657–8665), the carrier is liable for injury to an employee from negligence of other employees.

[As to Federal Employers' Liability Act as superseding common and statutory law on the same subject, see note in Ann. Cas. 1915B, 493.]

**Master and Servant—Injury—Federal Employers' Liability Act—Simple Tools.**

6.    Simple as well as complex tools are within Federal Employers' Liability Act, making the carrier liable for injury to an employee through a defect, due to its negligence, in its appliances and equipment.

**Trial—Province of Court and Jury—Conflicting Evidence.**

7.    The weighing of conflicting evidence, the balancing of probabilities, and the drawing of inferences are in the province of the jury, and if the evidence points in any wise to the conclusion that the allegations of the complaint are true, then it is not in the province of the court to determine the facts from the weight of the evidence.

[As to what is deemed to be invasion by court of the province of the jury, see note in 14 Am. St. Rep. 36.]

**Trial—Instructions—Requests.**

8.    It is enough, as requested instructions, that the charge given substantially covers them.

From Multnomah: ROBERT G. MORROW, Judge.

Department 2.    Statement by MR. JUSTICE BEAN.

This is an action by Thomas K. Gekas against the Oregon-Washington Railroad & Navigation Company, a corporation, to recover damages for negligence under the Federal Employers' Liability Act.    A verdict was rendered for the sum of $2,500.    From a judgment entered thereon, defendant appeals.    The plaintiff alleges as the gist of his complaint that on November 15, 1913, he was employed by the defendant on. its interstate railroad as section foreman, near

Rowena, Oregon; that the company furnished him with various appliances and tools for repairing its roadbed and right of way, among which was a certain adz, representing that it was a solid and substantial one with which to cut brush along its track; that the adz was defective in that a portion of the cutting edge was not properly constructed; that while plaintiff was engaged in using such tool he struck the same against a strong bush, and by reason of its alleged defective condition a portion of the cutting edge was broken loose and flew and struck him in the eye, causing the loss thereof. The defendant denied any negligence, and as a further and separate defense alleged, among other things, the following statements: The plaintiff was employed by the company as section foreman, and it was his duty, as part of his services, to remove brush, weeds, and other débris from the defendant's right of way, for which purpose the company furnished suitable tools. It was also the plaintiff's duty, and he undertook to choose and select the proper tools from the supply furnished, but voluntarily and improperly selected an adz which had been furnished by the defendant for chipping ties, sills and other timbers. The adz was not intended for cutting brush, and the accident and resulting damages were caused through the plaintiff's fault in negligently and unnecessarily choosing an adz to use for that purpose. The plaintiff was an old-experienced section foreman, and well knew that the adz was not a proper tool to use in cutting brush, and knew and appreciated the danger of the sharp edge chipping and small particles of steel flying therefrom if so used. Defendant alleged that the plaintiff assumed the risk of injury, and that the same was caused through his negligence,

and not by any negligence on the part of the company. The reply put in issue the new matter of the answer.

AFFIRMED.

For appellant there was a brief over the names of *Mr. W. A. Robbins, Mr. William W. Cotton* and *Mr. Arthur C. Spencer,* with an oral argument by *Mr. Robbins.*

For respondent there was a brief and an oral argument by *Mr. Arthur I. Moulton.*

MR. JUSTICE BEAN delivered the opinion of the court.

The evidence introduced on the part of the plaintiff tended to show that about July 26, 1913, Mr. Hickson, general superintendent or roadmaster of defendant company, instructed the plaintiff to clear the right of way of brush and to use the adzes for that purpose; that he was informed that the section foreman had two or three such tools, and that he told the plaintiff he would send him three more; that these were sent in a supply car from the Albina shops, where they had been for repair and revamping; that they were used for a long time as directed, keeping one to use on ties, until the time of the accident complained of on November 15th, when the plaintiff struck a bush on an embankment four or five feet high and a piece flew, striking his eye and causing the injury. The plaintiff testified that when he took the adz to use he saw no defect in it; that it had been forged or tempered, and that it was one of those that came from the shops at Albina. The evidence of expert blacksmiths tended to show that when the tool in question was reconstructed and heated the flaw would be perfectly apparent to one making such repairs. The adz, which was offered in evidence,

shows that one side or corner of it is composed of different layers, or what is usually termed a flaw.   While the tool has the appearance of having been used since the break, it shows that a part of the edge has been broken off.   It was described by the evidence as being in layers or folded over, or a piece had been welded on. It was called a "water crack."   The testimony tended to show that when such a flaw appeared in a tool of that kind it was customary to cut it out and forge the adz out again.   It was asserted on behalf of the defendant that the defect in the tool was a "pot hole," or latent defect, and could not be seen even by the smith who repaired it; but this conflict in the evidence was for the jury to settle.

1, 2. It is contended by counsel for the defendant' that the matter of repairing the adz is not embraced within the allegations of the complaint.   That statement charges that the tool in question was poorly constructed, else the injury would not have been incurred. This would seem to embrace a reconstruction of such implement as well as the original structure.   It is further contended by the defendant that there is no proof in the record that the adz was ever heated or drawn out at the defendant's shops.   The plaintiff, in his broken English, testified that he said he (referring to Mr. Hickson) would send him two or three more adzes, and that these came in a supply car from the shops at Albina; that the adz in question had the appearance of having been reconstructed or drawn out.   This was certainly some evidence from which the jury could determine whether or not the tool had been reconstructed.

At the close of the plaintiff's case counsel for defendant moved the court for a nonsuit, which was denied, and at the proper time moved for a directed

verdict in favor of the defendant, which was also refused. Defendant urges such rulings as errors.

Under the provisions of the first section of the Federal Employers' Liability Act (35 U. S. Stat. 65, c. 149), a right of action against a common carrier by railroad, while engaged in interstate commerce, is conferred (under certain specified conditions), for injury or death—

"resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment."

3. It is claimed on behalf of the defendant that where a tool such as an adz is simple in construction, so that defects therein can be discovered without expert skill or knowledge and without intricate inspection the servant is as well qualified as anyone else to detect defects and the danger of using such tool while defective; that, the tool being in the possession of the servant, his opportunity for inspection is better than that of the master—citing *American Car Co.* v. *Nachand,* 47 Ind. App. 204 (93 N. E. 1083), and other authorities.

The question for our consideration is: Was there evidence in the case tending to show negligence on the part of the defendant which resulted in whole or in part in the injury complained of sufficient to be submitted to the jury? It is observed by Mr. Labatt in his work on Master and Servant, Volume 3, Section 924a, as follows:

"In many cases, undoubtedly where the injury was caused by defects in simple tools, the ordinary rules in regard to the master's duty to use ordinary care to

furnish reasonably safe appliances have been applied without reference to the fact that the alleged defective appliance was in fact a simple tool; but in many cases of this character the courts have made a distinction between injuries caused by the so-called simple tools and those caused by more complicated and dangerous appliances. * * ''

After saying that in some cases the courts have gone to the length of stating that the rule requiring ordinary care on the part of the master does not apply where the injury was caused by a simple tool, the author says:

"It does not seem entirely logical to say that the master is under no obligation to exercise ordinary care to furnish reasonably safe appliances, simply because those appliances chance to be of a simple character": Labatt, p. 2479.

In *Drake* v. *San Antonio etc. Ry. Co.,* 99 Tex. 240 (89 S. W. 407), it is said that:

"In furnishing a tool of any kind, the master is bound to use ordinary care for the safety of the servant who uses it."

In *St. Louis etc. R. Co.* v. *Schuler,* 46 Tex. Civ. App. 356 (102 S. W. 783), the court stated:

"It cannot now be said in this state as a matter of law that the master is not liable to his servant for injuries resulting from obvious or patent defects in the simplest tools or appliances furnished him to work with."

See, also, *Buchanan & Gilder* v. *Blanchard* (Tex. Civ. App.), 127 S. W. 1153.

In the latter case, where a sliver from the head of a chisel struck plaintiff in the eye, destroying the sight thereof, the furnishing of a chisel made by the defendant's blacksmith of coarse-grained instead of fine-

grained steel, which it was customary to use, was held to justify a finding that the master had not furnished a reasonably safe tool. A judgment of nonsuit was reversed. In *Manning* v. *Portland Shipbuilding Co.,* 52 Or. 101, at page 107 (96 Pac. 545, at page 547), Mr. Justice EAKIN said:

"As to the defective condition of the tools, it may well be left to the jury to say whether negligence on the part of the defendant is established; and. although it is not established by direct and positive proof that the defect in the tools was the cause of the chipping of the chisel, yet there is evidence that fairly tends to that conclusion. Labatt, at Section 835, says: 'This rule, however, does not imply that it is only from direct evidence that the master's culpability can be inferred. The burden of proof is satisfied by the production of circumstantial evidence.' "

It is the duty of the master to use ordinary care to provide his servant with reasonably safe tools and appliances, and this is a general rule of law which regulates the matser's duty without relating to the specific character of the tools and appliances in question. The term "ordinary care" implies such care as the probable danger of injury would suggest to a reasonably prudent man. It applies to all men in all walks of life in which they come in contact with others. Ordinary care is required in the furnishing of either simple or complex tools. The only difference is that, in the case of complex and dangerous tools, an ordinarily prudent man would use a greater degree of care. But it does not follow from this proposition that an ordinarily prudent man would use no care at all in dealing with simple tools: *Longpre* v. *Big Blackfoot Mill Co.,* 38 Mont. 99 (99 Pac. 131); *Williams* v. *Garbutt Lbr. Co.,* 132 Ga. 221 (64 S. E. 65); *Crilley* v. *New*

*Amsterdam Gas Co.,* 106 App. Div. 127 (94 N. Y. Supp. 102).

4–7. In the case at bar, the evidence tended to show that while the plaintiff could not discern any defect at the time he received the adz, when it was heated and reforged at the shops of the defendant at Albina, some distance from where plaintiff worked, the flaw or overlap or faulty construction would be perfectly apparent to an experienced tool sharpener, and should have been cut out. Thus it appears that the employee of the defendant who sharpened the adz was in a better position to detect the defect than the plaintiff himself. It was therefore a question for the jury to determine under all the evidence whether or not the defendant's tool sharpener exercised ordinary care in reconstructing the adz. Under the Federal Employers' Liability Act the defendant is liable for an injury resulting in whole or in part from the negligence of its employee, or by reason of any defect or insufficiency, due to its negligence in its cars, engines, appliances or other equipment. In other words, such a carrier is responsible for the negligence of its employees. The defects and insufficiencies due to the negligence of the common carrier referred to in the act are not confined to complex appliances. The terms of the act in this respect are broad, and appear to apply to any part of the equipment, whether simple or complex. Ordinary care was the measure of care as directed by the instruction of the trial court, and there was no error in thus submitting the case to the jury or in refusing a directed verdict. It was a question for the jury whether the accident causing the loss of plaintiff's eye happened in the manner in which he charged in his complaint, and it was not for the court to weigh the evidence and determine from the weight

and effect thereof whether it did happen in that manner. The weighing of conflicting evidence, the balancing of probabilities, and the drawing of inferences are within the province of the jury, and, if the evidence points in any wise to the conclusion that the allegations of the complaint are true, then it is not in the province of the court to determine from the weight of the evidence what the real facts are: *Whitney* v. *Clifford,* 57 Wis. 156 (14 N. W. 927); *Kopacin* v. *Crown-Columbia Pulp & Paper Co.,* 62 Or. 294 (125 Pac. 281); *Domurat* v. *Oregon-Washington R. & N. Co.,* 66 Or. 135 (134 Pac. 313); *Smitson* v. *Southern Pacific Co.,* 37 Or. 81 (60 Pac. 907).

8. It was alleged by the defendant that the plaintiff assumed the risk of injury by selecting an improper tool, viz., adz, from a proper set of tools furnished by the defendant, and in attempting to use it for cutting brush. There was an issue of fact as to whether the adz was properly used by the plaintiff, and it is argued that the court erred in not giving to the jury defendant's requested instruction on this point. There was evidence which tended to show that it should not have been used for cutting brush, not having been made for that purpose. Opposed to this were statements tending to show that such tools were constantly so used by the defendant, and that Mr. Hickson, the general superintendent, directly ordered the plaintiff to use the adzes for cutting brush on the right of way, and furnished the one in question, with others. The court submitted this question to the jury and in its charge used much the same language as in the defendant's answer, to the effect that in using simple tools the servant must exercise judgment and discretion; that it is not the duty of the master to instruct the servant in the proper use of such tools. Upon the ques-

tion of assumption of risk, while not in the language requested by counsel for the defendant, and without using the word "assumed," the court charged the jury as follows:

"Where the servant has a number of tools provided, he has the right to make his own selection for the work he is about to undertake.  Then if he takes an improper tool, or attempts to use it in an improper way, or for a purpose for which it was not intended, he does so at his peril. * * Where he has a chance to make his own selection, he takes his chances, and that is one of the risks of the business": Transcript, p. 225.

Also on page 224 the court charged that:

"The duty of the master is to use reasonable care to provide his servant with reasonably safe tools and appliances. * * He is not an insurer, but he is bound to use reasonable care; and when he has done that, he has discharged his duty."

This instruction was in effect as requested, and the defendant has no reason to complain in this respect. The court instructed the jury in substance that a master is not liable for latent defects in ordinary tools, and that if they believed the alleged defect in the adz was a hidden one which could not have been discovered by the company or the one who acted for it in the exercise of reasonable care, then they could not find that the defendant was negligent; that in order to recover the plaintiff must prove that the accident occurred as alleged in his complaint, and that if it occurred in some other way, or if they found it was purely an accident not caused by negligence, he was not entitled to recover.  The court defined negligence and charged the jury that if they found that the plaintiff was negligent himself, and that his own conduct contributed to the injury, provided they found that the company was also

negligent, the plaintiff could not recover full damages, but that they should be diminished in proportion to the amount of negligence attributable to the plaintiff, as follows:

"So that your verdict, when finally agreed upon, will be in proportion to the full compensation as the negligence attributable to defendant bears to the entire negligence attributable to both plaintiff and the defendant; that is to say, your first inquiry should be, 'Was the defendant guilty of negligence?' And your second inquiry should be, 'Was the plaintiff guilty of negligence?' And your third inquiry should be, 'In what degree did these casual negligences contribute to the accident?' And I instruct you as a matter of law you must determine what proportion plaintiff contributed to causes that caused the accident. If you find plaintiff's negligence contributed to the extent of one third of the entire negligence, then the plaintiff's damages would be reduced by one third. If to the extent of one half, then, his damages would be reduced by one half; and if to the extent of two thirds, then his damages would be reduced by two thirds; and if his negligence was alone the cause of the accident, then, of course, that would wipe out the damages, and your verdict would be in favor of the defendant."

The issue was largely one of fact, and was fairly submitted to the jury, and the defendant's several requested instructions were covered in substance by the charge to the jury.

It was not claimed by the plaintiff upon the trial that he could base a recovery upon an injury resulting from the ordinary liability of tools to break and fly. Plaintiff was required to prove the defective condition of the adz, the knowledge or opportunity of knowledge of such defect on the part of the defendant, and the want of such knowledge on his own part. The proof tended to show, and the jury found, that the injury

complained of resulted in whole or in part by reason of a defect or insufficiency in the adz, which was due to the defendant's negligence. Finding no error in the record in the submission of the cause to the jury, the judgment is affirmed.     AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE HARRIS concur.