## CAVORETTO v. ALASKA GASTINEAU MINING CO.

(Circuit Court of Appeals, Ninth Circuit. October 8, 1917.)

No. 2965.

1. TRIAL ⬅=251(8)—INSTRUCTIONS—APPLICABILITY TO ISSUES.

In an action for injuries received by a servant when a splinter of steel flew from a hammer wielded by another, the court charged that, if the hammer was defective, the jury should determine whether defendant knew of the defect, and whether the injured servant might have repaired it, or whether he might have selected another hammer for the work. The injured servant was not required to use the hammer, and there was no showing that he was required to repair defects. *Held,* that the instruction was defective, submitting issues not raised, and cannot be justified on the theory that it might properly refer to the helper.

2. MASTER AND SERVANT ⬅=286(4)—INJURIES—EVIDENCE.

Evidence in an action by a servant injured by a splinter from a hammer wielded by another servant *held* sufficient to take question of defendant's negligence to the jury.

In Error to the District Court of the United States for the First Division of the District of Alaska.

Action by Dominico Cavoretto against the Alaska Gastineau Mining Company. There was judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions to grant new trial.

Action by Cavoretto against the Alaska Gastineau Mining Company for damages for loss of the sight of an eye. Trial to jury, and verdict for the mining company. Cavoretto brings writ of error. Cavoretto was a general blacksmith, of experience in cutting cold steel. His duty at the time he was hurt was to hold a chisel upon a bar of steel while a helper would strike the face of the chisel with a sledge hammer weighing about 14 pounds. His complaint charged that the hammer, used through the negligence of the company, became chipped, frayed, and unsafe; that the defendant knew of such condition, or ought by ordinary care to have known it; that when at work a piece of steel was broken off the hammer by the force of a blow, and plaintiff was hit in his eye by a piece of steel. The company denied all negligence and pleaded assumption of risk.

Plaintiff testified that his custom was to tell the helper to cut the steel; that the helper knew what kind of tools to use in the work; that about a month before the injury he observed that the hammer used was chipped, with small pieces hanging, and that the head was getting smaller, because crushed all around, and that pieces would be apt to hit some one when blows were struck; that when he first saw this condition he told the foreman, and asked him why he did not get a new hammer; and that the foreman replied that he had ordered a hammer, which was "liable to come any day," but that he did not look at the hammer on the day he was hurt. The helper testified that he was under the orders of the blacksmith, doing what the blacksmith told him to do, and that Cavoretto told him that they were to cut some steel. He noticed that the hammer was "a little soft," but says that he made no complaint of it, and that he never heard anybody else complain of it.

---

⬅=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

J. H. Cobb, of Juneau, Alaska, and Heywood & Wilson and Walter Shelton, all of San Francisco, Cal., for plaintiff in error.

L. P. Shackleford, H. L. Faulkner, and W. S. Bayless, all of Juneau, Alaska (Rufus Thayer, of San Francisco, Cal., of counsel), for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] In charging the jury the court said:

"If you find that the hammer was a defective appliance, then the next question would be: Was the defendant required to use that particular hammer while in that particular condition in the performance of the work, or was he free to repair or reshape it, or get some other hammer that was suitable, and not dangerous? For, if he was so free, then defendant cannot be said to have required the work to be done with that hammer in that shape. If you find from the evidence that this particular hammer was furnished plaintiff to do the work with, and that it was defective, then you are to inquire further whether the defect in the hammer was due to the negligence of the defendant —that is to say, whether or not it knew, or by the exercise of reasonable care could have known, that the hammer was defective. If it was defective, and the defendant knew, or ought to have known, of that fact, and required the plaintiff to use it in the performance of his duties—that is, left him no free and voluntary choice but to use it in that shape—and if the injury, if any, was received by virtue of so using the implement so found to be defective and required to be used, then your verdict should be in favor of the plaintiff for such damages as you may find that he has suffered. But if you find that the implement was not defective under the circumstances, as I have defined 'defective' to you, or if you find that the plaintiff was not required to use it in the work, but might have taken a hammer which was not defective, and yet freely and voluntarily chose the defective hammer, knowing it to be defective, then he cannot recover, and your verdict must be for defendant."

Counsel excepted to this instruction, and contend that it was not warranted by the pleadings or the evidence in the case. Their argument is that it injects into the case an issue whether or not plaintiff was required to use the defective hammer, and that such issue was erroneously submitted, because it was never contended that the plaintiff himself was required to use the hammer, but that it was admitted his coemployé, the helper, was the man to whom the tool was furnished, and by whom it was used. It is also said that by such injected issue a burden was erroneously put upon plaintiff to show that he was required to make selection of a' hammer, and that, inasmuch as the proof did not show any such requirement, the jury was practically constrained to find against him.

We are of the opinion that the trial court was in error in giving the instruction complained of. It was not in accord with the theory or evidence of the plaintiff that he was required by defendant to use the hammer, said to be frayed and battered, or that it was the duty of plaintiff to repair or reshape the hammer used, or to see to it that the helper got another hammer for use. The effect of the charge was to state, as among the essential issues, matters which were not material points pleaded or in controversy. By submitting them there arose such a confusion of statement as doubtless led the minds of the jurors to deliberate upon and solve questions not involved, and which, if answered in a certain way, seemed to call for a verdict against plaintiff.

[2] Defendant says, however, that as there was testimony by the foreman to the effect that there were other hammers available, it was not harmful error to omit any reference to the helper, because if the jury had been told that the hammer was in the hands of the helper, unless coupled with evidence that the helper was careless in the use of the hammer, such instruction would not have availed plaintiff, and that if, by giving such an instruction, the jury might have believed that the accident was due to the carelessness of the helper, and had found for plaintiff, it would have been ground for reversal, because neither pleadings nor proofs would have justified the finding. We need not follow this argument to its possible results, because it is fundamental that the plaintiff had a right to have his case submitted upon the issues pleaded and presented, and to have such issues stated free from commingling with injected issues not pleaded or presented, and which may have been the foundation of the adverse verdict reached. We cannot hold that there could be no recovery, and, without intending to express any opinion upon the facts, we believe the evidence was properly for the jury. New York, N. H. & H. R. Co. v. Vizvari, 210 Fed. 118, 126 C. C. A. 632, L. R. A. 1915C, 9; Gekas v. Oregon-Washington R. & N. Co., 75 Or. 243, 146 Pac. 970; Pushcart v. N. Y. Shipbuilding Co., 81 N. J. Law, 261, 81 Atl. 113.

The judgment is reversed, and the cause is remanded, with directions to grant a new trial.